THOMAS BEYMAN v. WILLIAM BLACK.

1. LOCAL STATUTES.—Where there is no express constitutional restriction against the passage of local laws, the courts cannot hold such laws void for want of constitutional power to enact them. The authority to enact laws strictly local, implies the same authority to make local exceptions to a general law.

2. STOCK LAW—INSPECTION, &c.—STATUTE.—"An act to encourage stock-raising and for the protection of stock-raisers," approved 23d March, 1874, is not unconstitutional on account of its operation being suspended as to a large number of counties.

3. STOCK LAWS.—The legislation in this State assumes, that, in regard to cattle, possession is not *prima facie* evidence of ownership; ownership must be established by the mark and brand.

4. SAME.—The act of 23d March, "An act to encourage stock-raising and for the protection of stock-raisers," discussed, its objects and modes of procedure explained.

5. DUE COURSE OF LAW.—The forfeiture provided for in sections 27 and 43 of said act, is not strictly a forfeiture. The act assumes that the party from whom the cattle seized were taken, was not the owner, and protects the absent and unknown owner, by providing for sale, and that the proceeds of the sale be held for him a limited time.

6. SAME—DUE PROCESS OF LAW.—Due process of law in each particular case, means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs.

7. SAME.—The modes of procedure provided in the stock law is a legitimate police regulation of the peculiar species of property to which it

refers, designated for the due protection of all owners of such property.

8. SAME.—The proceedings indicated in said act, to be had before justices of the peace and district judges, in the condemnation of property seized, are intended to be regular judicial proceedings before the District Court, or in the Justice's Court, as the case may be.

9. SAME—PLEADING.—See allegations held sufficient, in a proceeding instituted in the District Court, by an inspector, to condemn a lot of hides and cattle seized by him under said law.

APPEAL from Nueces. Tried below before the Hon. T. C. Barden.

The facts are carefully stated in the opinion.

*Lovenskiold & McCampbell,* for appellant.

*Phillips, Lackey & Stayton,* for appellee.—This is a proceeding under the 43d section of the act of March 23, 1874, General Laws, 45. To authorize this procedure, the seizure must be made in consequence of the existence of the facts mentioned in the 8th and 9th sections of this act. The petition does not allege the facts which are made necessary by said sections.

There is only one other section of the act which has any reference to forfeitures; that is the 27th section. The facts necessary under said section are not alleged.

If, however, the facts mentioned in the several sections of the statute referred to, were alleged in the petition, then we respectfully submit that the same would not entitle the complainant to any relief; for we hold that so far as the sections referred to are concerned, said act is in violation of the Constitution.

The 16th section of the bill of rights provides that "no citizen of this State shall be deprived of life, liberty, property, or privileges, outlawed, exiled, or in any manner disfranchised, except by due course of the law of the land."

In Janes *v.* Reynolds, 2 Tex., 251, Chief Justice Hemphill says: "The terms, 'laws of the land,' are now, in their most

usual acceptation, regarded as general public laws, binding upon all members of the community, under all circumstances, and not partial or private laws, affecting the rights of private individuals or classes of individuals."

Justice Cooley, in his work upon Constitutional Limitations, 392, says: "To forbid, to an individual or a class, the right to the acquisition or the enjoyment of property, in such manner as should be permitted to the community at large, would be, to deprive them of liberty in particulars of primary importance to their pursuit of happiness; and those who claim the right to do so, ought to be able to show a specific authority therefor, instead of calling upon others to show how and where the authority is negatived."

The statute in question is not general in its operation, but affects only those who may own or purchase property in certain districts. It does not purport to be a general law, for the first section thereof restricts it, by creating inspection districts in only a portion of the State, while it does not provide for the creation of like districts in other parts of the State at any time; but if it purported to be a general law, merely suspended in a portion of the State, it would not affect the question, for a partial suspension of a general law would be subject to the same objections as a law which upon its face was partial.

Judge Cooley, in his work upon Constitutional Limitations, upon the question of the suspension of laws, says: "The Legislature may suspend the operation of the general laws of the State, but when it does so, the suspension must be general, and cannot be made for individual cases or for particular localities." (See also Holden *v.* James, 11 Mass., 396; Davison *v.* Johonnot, 7 Met., 393.)

"The general exemption laws cannot be varied for particular cases or localities." (Bull *v.* Conroe, 13 Wis., 238.)

In Wally's Heirs *v.* Kennedy, 2 Yerg., 554, the court say: "The right of every individual must stand or fall by the same rule of law that governs every other member of the

body politic, or land, under similar circumstances; and every partial or private law which directly proposes to destroy or affect the individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were it otherwise, odious individuals and corporations would be governed by one law; the mass of the community, and those who made the law, by another; whereas, the like general laws, affecting the whole community equally, would not have been passed."

That the laws shall be general in their operation, affords a guaranty that bad laws will not be enacted; and when we look to the law in question, no one can for a moment doubt, from the large number of the most populous counties which are not affected by it, that it would have been impossible to enact this statute if it had provided that it should be operative throughout the entire State. If one law may be partial in its operation, another may. In one part of the State, the whole penal code may be suspended, while in the residue, it is in full force. The law of marriage and divorce; of descent and distribution; of limitation; the law regulating the course of procedure in the courts; in fine, any law, however much it may affect all of the best interests of society, may be suspended in a portion of the State, while fully effective in all other parts, if such power of partial legislation exists. We have laws by which the inhabitants of certain localities are permitted, for their own convenience, to have certain local regulations, by which they are governed, being at the same time subject to the general laws of the State. Municipal corporations, which are but subordinate instrumentalities of the Government, ordinarily have power to make laws, local in their effect, but such corporations are incorporated upon the actual or implied consent of the people so to be governed.

The provisions of the statute in question impose upon residents of certain named counties an onerous tax, in the matter of fees to inspectors, and also impose upon them restrictions which are not only onerous, but, in many instances,

vexatious, while other residents of the State, in the pursuit of the same business, are not subjected to the like impositions.

Section 19, article 11, of the Constitution, provides, that "taxation shall be equal and uniform throughout the State." That the inspection fees required to be paid under the statute are as much a tax as any other contribution required to be made to the State by the citizens, for the support of the machinery of the Government, we have no doubt. It is a demand which the Government makes upon the citizen, for the support of an officer of the Government, the compliance with which is a condition precedent to the right of the citizen, under the statute, to dispose of his own property, to be used for certain purposes within his own county, or to use the same in a market out of his county.

"Every burden which the State imposes upon its citizens, with a view to a revenue, either for itself, or for any of the municipal Governments, or for the support of the governmental machinery, in any of the political divisions, is levied under the power of taxation, whether imposed under the name of tax, or under some other designation." (Cooley's Const. Lim., 469.)

Whatever form taxation may assume, it must be equal and uniform throughout the State. If the citizen of one section is to be taxed, by way of fees to an inspector, before he can sell his own property wherever he pleases, then every citizen must be subject to the same rule, or there can be no equality —no uniformity. The 27th and 43d sections of the act are, however, subject to another fatal objection, which is, that said sections provide for the forfeiture of property, without having the facts which authorize the forfeiture first judicially ascertained. (Cooley's Const. Lim., 362.) The 27th section provides, that the inspector may take charge of cattle and sell them, as if under execution, and, in case they are not voluntarily delivered to him, provides that he may sue for and sequestrate them, without giving bond or security.

In the first instance, "he levies without process, condemns without proof, and sells without execution." An inspector is not clothed with any judicial power by the law.

In case of sequestration, it does not clearly appear whether the suit is to be instituted for the sole purpose of getting possession of the property, or for the purpose of having the facts ascertained which, under the statute, authorize the forfeiture. The section makes no provision for a trial before any court in which the forfeiture may be decided; but simply provides that upon the order of a justice of the peace, or of a district judge of the court where the suit may be instituted, the property seized may be sold. The statute does not seem to contemplate a trial and judgment before the sale; nor does it provide for citation in any form to the owner, before the sale and deposit with the county treasurer. Yet if the deposit is not called for in one year, the statute vests it in the county. Can the rights of the owner be thus divested?

A judge of a District Court, as contradistinguished from the District Court, can have no such power under the Constitution. The language of the statute would seem to imply that the sole purpose of the suit is, through the writ of sequestration, to obtain the possession of the property.

The 43d section provides that when a seizure has been made under the 8th and 9th sections of the act, that the inspector shall report the same to a justice of the peace, or some judge of the District Court whose duty it is made to issue, or cause to be issued, citations addressed to "all whom it may concern," setting forth the seizure of said property, with a description of the same, commanding them to appear at a day named in said citation, to show cause, &c.

This section of the act clearly evidences that the forfeitures are not to be ascertained and declared by any judicial tribunal known to the Constitution, but by persons holding certain judicial positions, not, however, in the exercise of their judicial functions, for otherwise the statute would have directed

that those proceedings be had in the courts of which such persons are the chief officers.

We are forced to this conclusion, from the fact that the jurisdiction of the justice of the peace is as ample in these cases, under the statute, as the jurisdiction of the judge of the District Court, and this notwithstanding the amount that may be involved; and by the further fact that the citations are to be returned to no fixed term of any court, but at a day named therein.

This section makes it the duty "of the judge, or justice of the peace, issuing said citations, to proceed to condemn the property mentioned in said citations, unless," &c. No reference whatever is made to any court.

The statute attempts to confer upon the officers named, a jurisdiction which the Constitution has conferred upon the courts of which such persons are officers.

The Constitution having vested the whole judicial power of the State in certain tribunals, the Legislature has no power to confer upon individuals any part of that power, much less to confer upon them the extraordinary powers claimed in this case.

GOULD, ASSOCIATE JUSTICE.—On the 23d of June, 1874, Thomas Beyman, inspector of hides and animals for the county of Nueces, with the unorganized county of Duval attached, and claiming to proceed under "An act to encourage stock-raising and for the protection of stock-raisers," approved March 23, 1874, filed in the District Court of Nueces county, a paper, in the nature of a petition, entitled "*Ex parte* Thomas Beyman, inspector of hides and animals, *v.* Sixty hides and ninety-five heads of cattle, seized for violation of statute." He states that he had seized said hides and cattle at a packery and slaughter house in Nueces county, known as Deavalous; that the cattle, including those recently slaughtered, whose hides were seized, had all been driven into the county from the counties of Cameron

and Hidalgo, uninspected, and without bills of sale properly authenticated, and had all been freshly counter-branded by *running on* the corresponding brand of the original owner; that the hides and cattle were all claimed by William Black, who asked the inspection of the same, and who submitted pretended bills of sale, not authenticated, and that, being satisfied not only that the cattle had been introduced in the district from other counties in violation of the law, but also that the same had been stolen, he had made the seizure. He asked for citation, to all whom it may concern, to appear and show cause why said property should not be forfeited to the county of Nueces, and that, after posting of said citation and proof thereof, that said property be condemned and ordered to be sold, with the least possible delay. On June 26, William Black appeared by counsel, and excepted to the petition, on the ground that it did not state facts sufficient to authorize the seizure, or to give the court jurisdiction, to authorize a condemnation and sale. This demurrer was, by the court, on the same day that it was filed, overruled, and thereupon Beyman and Black filed their written agreement that the court should direct the plaintiff to sell the hides and cattle for cash, and deposit the proceeds subject to the order of the court. On the 27th, the court ordered the sale, which took place at two o'clock on the same day, and the proceeds, less expenses and commissions of inspector, and less also the sum of thirty-one dollars and fifty cents, being (the report of sale says) for property claimed by others and surrendered by consent, was deposited as directed. At the next term of court, in October, Black again filed exceptions to the pleadings of the plaintiff, on the ground, 1st, that the statute was unconstitutional and null; 2d, that no case was stated under the statute specifying, under this latter head, amongst other grounds, that it was not averred that the hides or animals were about to be taken out of the county or the animals about to be slaughtered. At the same time, he filed an answer to the merits, in which he claimed to be the true and

lawful owner of the hides and animals seized; that, in fact, the hides seized were taken from animals duly inspected before slaughtering; that he bought the animals from a resident of Nueces county, whose duly recorded brand was at the time on each of the animals; and that, if any of them were driven from any other county, he was at the time of his purchase, ignorant of the fact; winding up with a claim of damages for the seizure, and prayer for judgment therefor, and for the proceeds of sale.

The plaintiff amended his complaint, so as to show that the cattle were at the packery for the purpose of being slaughtered, and had been driven there from other counties, without complying with the statute, and that the hides had just been taken off of cattle so driven.

The court sustained Black's exceptions, and the plaintiff, not desiring to amend, the court thereupon gave judgment against him for the proceeds of sale, authorizing Black to receive the amount deposited and giving him execution for the amount retained by the inspector for commissions, charges, and expenses.

From this judgment, Beyman, the inspector, has appealed.

The first question presented is as to the constitutionality of the entire act of March 23, 1874, because its operation was, by its terms, suspended in over fifty counties of the State. In the case of Orr *v.* Rhine, 45 Tex., 345, this objection to a statute which was limited in its operation to two counties only, was considered, and the opinion expressed, "that it is quite too well settled to admit of discussion, that where there is no express constitutional restriction against the passage of local laws, the courts cannot hold such laws void for want of constitutional authority to enact them." Certainly, the constitutional authority to enact laws strictly local, implies the same authority to make local exceptions to a general law. The act in question is general in its terms and in its operation, save in certain specified counties, and can with no propriety be termed a local or special law. Indeed, it has not

been argued that the act violates any of the provisions of the constitutional amendments of January, 1874, forbidding local or special laws in certain enumerated cases, and providing that "in all other cases, where a general law can be made applicable, no special law shall be enacted;" and that "the Legislature shall pass general laws providing for the cases before enumerated in this section, and for all other cases which, in its judgment, may be provided by general laws." (Laws of 14th Leg., 235.)

Even if the law could be regarded as a local or special act, its passage would be taken as the judgment of the Legislature, that the case was not one which could be provided for by a general law, and their decision is conclusive of that question.

The main objection urged against the constitutionality of the act is, that it provides for the forfeiture of property by proceedings not according to "due course of the law of the land." (Bill of Rights, Cons. of 1869–'70, sec. 16.) The act, it is said, makes no provision for a trial before any court, but provides that the property seized be sold before citation to the owner, on the order of a justice of the peace or district judge. In order to a proper understanding of the case, it becomes necessary to examine the provisions of the statute.

Before doing this, however, it may be well to call to mind the fact that in portions of the State where stock-raising is a leading industry, cattle are allowed to run at large on the range, and that the legislation of this State has long recognized the impracticability of identifying them otherwise than by the mark and brand, and has made the recorded mark and brand the proper evidence of ownership. (Paschal's Dig., art. 4655, et seq.) The peculiar exposure of this species of property to depredation, has called forth repeated legislative efforts to provide such police regulations as would be adequate to its protection, and it will be found that these regulations assume that, in regard to cattle, which are so easily taken possession of on the prairies, possession is not

*prima facie* evidence of ownership, but ownership must be established by the mark and brand. (Paschal's Dig., arts. 6567, 7445; Wills *v.* The State, 40 Tex., 70.) These regulations sought to enforce a proper use of and reference to the recorded mark and brand, especially in cases of sales, and in cases where cattle are driven to market, out of the county, or are slaughtered by persons engaged in that business. (Id., and art. 7451, *et seq.*) Finally, the act under consideration was passed, a leading idea of which was to enforce the inspection of cattle driven for slaughter, or driven out of the county for shipment, and to make it the duty of the inspector to stop the driving or slaughter of uninspected cattle, or of cattle of which, when inspected, the party in possession did not produce the appropriate evidence of ownership.

The act creates the office of inspector of hides and animals for each county, prescribes the official oath and bond of that officer and his deputies, and the seal of office, and makes it the duty of the inspector, "in person or by deputy, to faithfully examine and inspect all hides or animals known or reported to him as sold, or as leaving or going out of the county for sale or shipment, and all animals driven or sold in his district for slaughter, to packeries or butcheries." Section 7 requires the inspector to prevent the sale or shipment out of the county of unbranded hides or animals, or those whose brands are not ascertainable, unless identified by proof or by bill of sale from the person found to be the owner. Sections 8 and 9 commence: "Every inspector shall have power to and may seize and condemn" such unbranded animals or hides, or animals or hides on which the brands cannot be ascertained, and all calves and yearlings freshly marked or branded, about to be slaughtered, shipped, or driven out of the county, unless identified as provided. The act contains regulations in regard to bills of sale of animals and hides, and the authentication and record thereof; requires a road brand for cattle driven to market beyond the limits of the State; regulates the driving of animals to Mex-

ico, and the reshipment of imported hides or animals; the manner of authorizing a person to gather or drive over stock; the mode of branding and counterbranding, and of making record of marks and brands, and prescribes the fees of the inspector and recording clerk.

Section 27 of the act prescribes the mode of inspection, and requires the inspection of cattle about to be driven before leaving the county, also another inspection when they reach the place of slaughter or shipment; and proceeds: "And the inspector, at the point of destination, shall carefully examine and know, if possible, whether he has cattle under his control other than those originally inspected, and if he has, then he will take charge of the same and sell them as if under execution; or if not voluntarily delivered to him, then he may sue for and sequester them, without giving bond or security; and by order of the justice of the peace or district judge of the court where the suit may be instituted, on application of said inspector, or his successor, the cattle shall be sold in like manner, and the proceeds of sale, less one fourth retained by him for compensation and costs of suit, to be deposited with the county treasurer (for the owner of the cattle sold) for one year; if not called for, to vest in the county. He shall also file with the treasurer a statement of the number in each mark and brand sold, and the amount each sold for." * * The act has numerous provisions which it is not deemed necessary to notice. Amongst other offenses created, it is made a misdemeanor to sell uninspected hides; to drive out of the county cattle (or horses) uninspected, and to purchase animals or hides without obtaining a bill of sale from the owner or agent.

Section 43 is as follows: "When the inspector has seized any hides or animals, as provided for in sections 8 and 9, he shall report the fact to some judge of the District Court, or justice of the peace; and it shall be the duty of said judge or justice to issue, or cause to be issued, a citation, addressed to 'all whom it may concern,' setting forth the seizure of said prop-

erty, with a description of the same, commanding them to appear at a day named in said citation, to show cause why the said property should not be forfeited to the county wherein the same was seized and sold for the benefit of said county. Said citation shall be directed to (the) sheriff or other officer of said county, who shall cause certified copies of the same to be posted in three public places in said county for a period of ten days before the day mentioned in said citation. Upon proof of the posting of said citation, as herein required, it shall be the duty of the judge, or justice of the peace, issuing said citation, to proceed to condemn the property mentioned in said citation, unless satisfactory proof should be made of the ownership of said property, or other sufficient cause be shown why the same should not be condemned, and he shall order the same to be sold by the inspector at public auction to the highest bidder. The inspector shall be entitled to retain one fourth of the net proceeds of such sale, after deducting therefrom all expenses connected therewith, and he shall immediately pay the remaining three fourths thereof into the county treasury; and all sums so paid in shall be placed to the credit of the general fund of the county."

Although the statute uses the word "forfeited," our opinion is that the result of the procedure described in sections 27 and 43 is not a forfeiture or punishment annexed by law to the illegal act or negligence of the owner of the cattle and hides. (1 Bouv. Law Dict., 602; 2 Kent, 385, 386.) The statute does not proceed on the assumption that the cattle or hides are the property of the party in possession, who is about to have them slaughtered, uninspected, in violation of law, and who is liable criminally therefor. On the contrary, it does assume that he is not the true owner, and seems to take it for granted that when thus found violating the law he will voluntarily deliver the cattle and hides to the inspector, and that officer will take charge of them for the benefit of the true owner. As the best that can be done with them, for the absent and unknown owner, they are to be sold, and the

proceeds, less the inspector's charges, held for the benefit of the owner for a limited time. If the party in possession asserts the validity of his claim as owner, the inspector may, as provided in section 27, institute an ordinary suit against him, and have the cattle sequestered, without bond or security; or, if he has seized the property, he may, under section 43, institute a proceeding, such as was adopted in this case, designed to give any claimant an opportunity of stopping the sale by establishing his ownership. The statute, in view of the perishable nature of the property, undoubtedly intended to provide for a sale, on the order of the justice of the peace or district judge of the court, in which, according to the value of the property, the suit is instituted, but it is believed that any claimant might stop the sale, by giving bond in time.

In the case before us, the sale was had by consent, and no question arises as to the time or manner in which it was made. After the sale, the proceeds stood in lieu of the property sold, and Black had his day in court to establish his rights thereto. The proceedings which were had, were during the regular session of the District Court; and whilst the statute is loosely framed and somewhat obscure, we think that, taking the sections 27 and 43 together, they sufficiently indicate a suit or proceeding in the regular courts. If Black had, in fact, purchased the cattle of the true owners, and was guilty of no further wrong than failing to comply with the statute, although the property had been sold, he still had his day in court to establish his right to the proceeds. The entire procedure is but a justifiable and reasonable police regulation, and it cannot be said that he has been deprived of his property otherwise than by due course of the law of the land. "Due process of law in each particular case means such an execution of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." (Cooley's Const. Lim., 356.) We are unable

to see that the procedure authorized by the statute and pursued in this case, violated any of those maxims or safeguards, or that it was anything more than a legitimate police regulation of the peculiar species of property to which it refers, designed for the due protection of all owners of such property.

It has not been argued in this case, that the seizure was unreasonable, within the meaning of section 7 of the Bill of Rights. The seizure was made by an officer sworn and bonded, and purports ·to have been made· on facts coming within the personal observation and knowledge of that officer. If the inspector seizes arbitrarily and in violation of law, the party injured has his remedy by suit on the inspector's official bond. As already repeatedly remarked, the cattle and hides are seized on the assumption that the owner is unknown. If it should turn out that the party in possession was the true owner, armed at the time with all the evidences of ownership and inspection required by the statute, then certainly the seizure is illegal, and the remedy of the party is the same as in other cases of official abuse of authority.

The law cannot be held unconstitutional on any of the grounds which have been considered. Because the court erred in sustaining the exceptions to the petition, the judgment is reversed and the cause remanded.

                                        Reversed and remanded.