STERLING P. CLARK, SHERIFF, V. R. W. FINLEY, COMPTROLLER.

No. 817. Decided December 14, 1899.

**1. Constitution—Subject of Bill Expressed in Title.**

The Act of June 16, 1897, limiting compensation of certain officers, embraces but one general subject, and sufficiently expresses that subject in its title, as required by article 3, section 35, of the Constitution, unless it be the portion relating to appointment of deputies. (Pp. 176, 177.)

**2. Same.**

If the subject of appointment of deputies is not in the purview of the title of the act, within the constitutional rule, the remaining provisions of the act are not thereby rendered void. (Pp. 176, 177.)

**3. Same—Cases Questioned.**

State v. Shadle, 41 Texas, 404, and Bills v. State, 42 Texas, 305, questioned. (P. 177.)

**4. Constitution—Amending Law by Reference to Title.**

The Act of June 16, 1897, limiting compensation of certain officers, is not invalid as being an amendment of previous laws by reference to their titles only, prohibited by article 3, section 36, of the Constitution. (P. 177.)

**5. Same.**

Constitution, article 3, section 36, does not prohibit the passage of a law (Act of June 16, 1897, in regard to compensation of officers) which declares fully its provisions without reference to any other act, nor does the Constitution require that the entire law as amended shall be set out. Snyder v. Compton, 87 Texas, 374. (P. 177.)

**6. Constitution—Special or Local Laws.**

The Act of June 16, 1897, reducing the compensation of certain officers, is not a local or special law, such as is prohibited by article 3, section 56, of the Constitution. Beyman v. Black, 47 Texas, 558. (Pp. 177, 178, 180.)

**7. Same—Special Law Defined.**

A statute which relates to persons or things as a class, is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition. (Pp. 178, 179.)

**8. Same—Reasonableness of Classification.**

The authorities questioning validity of statutes on the ground of unreasonable classification of subjects affected by them, questioned. (P. 179.)

**9. Same.**

Legislative classification of officers with reference to compensation, based upon the population of their respective counties, can not be pronounced unreasonable by the courts. (Pp. 179, 180.)

**10. Local Law Defined.**

A local law is one the operation of which is confined to a fixed part of the territory of the State. A law applicable to the whole State, restricting the fees of officers in counties exceeding a certain population, and subject to change in its application according to the increase or decrease of population of the respective counties, is not a local law, though its operation, in the main, may be restricted to a minority of the counties of the State. (P. 180.)

**11. Constitution—Commissioners Court—County Business.**

The Act of June 16, 1897, in regard to fees of officers, is not violative of article 5, section 18, of the Constitution, in prescribing that the county judge shall designate the number of deputies to which certain officers may be entitled; such officers, though called county, are in fact State officers, and the number to be allowed is not a county affair committed to the commissioners court; the Constitution does not prohibit the Legislature from intrusting to other agencies county business not committed by it to the commissioners court; nor is the office of county judge wholly judicial. (P. 181.)

**12. Constitution—State Funds for County Purposes.**

The provision of the Act of July 16, 1897, requiring payment by officers of fees collected in excess of salary into the county treasury is not violative of the Constitution, though some of their fees may be paid by the State out of public taxation. (Pp. 181, 182.)

ORIGINAL APPLICATION for writ of mandamus against the Comptroller.

*E. G. Senter*, for complainant.—The State can not arbitrarily discriminate between its citizens, its counties, or its officers, and is without power to vary its penalties for crime in particular counties. Both of these things this law seeks to do.

The classification of counties, in the law for the regulation of fees

to be paid to sheriffs in felony cases, is arbitrary, unreasonable, and inconsistent with other provisions of the bill itself.

If the law has an object within the purview of the constitutional rule (section 35, article 3), it is to regulate and limit the maximum compensation to be paid the officers named in it. Its object with reference to the sheriff is wholly different, being a measure to fix certain civil fees, and to fix fees in felony cases to be paid sheriffs in certain counties. It follows under said rule that even if the law be sustained, so much of it as refers to the sheriff is inoperative and void.

The authority of the Legislature in fixing the compensation of the sheriff is limited to prescribing the perquisites and fees of office he shall receive, and it is without power to graduate such perquisites and fees upon any pretext. The law fixes a minimum compensation for all county officers except the sheriff in every county in the State, but provides for the enforcement of this limitation in only about one-fourth of the counties, and hence is unreasonable, arbitrary, and inconsistent in its general method of classification.

The law provides for the diversion of public moneys from the general revenue fund of the State to the county treasuries, and thereby violates several provisions of the Constitution. The law invests the county judge with powers that are not judicial in their nature, and that are expressly reserved to the commissioners courts by the Constitution.

The law seeks to take private property for public use without adequate compensation being made therefor.

*Tarlton & Ayres* and *Wallace Hendricks*, also for complainant.—Where an act embraces all of a group of objects having characteristics sufficiently distinguished to make them a class by themselves, and where such a class calls for legislation appropriate thereto, such legislation is general in character; but where classification refers to a group of objects, such as counties, which possess different characteristics and attributes growing out of difference in population, so that in the nature of things the classification can not reasonably rest upon a similarity of attributes or characteristics, such classification is arbitrary, unjust, and illusory, and the legislation embodying the classification is local and special, and contravenes the provision of our Constitution forbidding local and special legislation. Richards v. Hammer, 42 N. J. Law, 435; State v. City, 23 Law. Rep. Ann., 525; McCarthy v. Commonwealth, 110 Pa. St., 243; Morrison v. Bachart, 112 Pa. St., 322; Appeal of Ayars, 122 Pa. St., 266.

The law in question, in grouping the counties of the State into two classifications with regard to the fees of sheriffs, works a classification which is arbitrary, unnatural, unreasonable, and illusory, in this, that where the sheriff of a county having, say, a voting population of 2999 receives the sum of one dollar for a given service, the sheriff of another county having, say, a voting population of 3001 receives but eighty cents for the same service. Illustrations might be multiplied by citing

other counties, as they fall within the one or the other of this unnatural classification.

*A. T. Watts*, also for complainant.—The title of the act under investigation expresses three distinct subjects of legislation, and therefore infringes section 35, article 3, of the Constitution. ·

As early as Cannon v. Hemphill, 7 Texas, 207, it was held that the provision of the Constitution as to the title of acts, was mandatory, and this is the established rule in this State. See Giddings v. San Antonio, 47 Texas, 548; Peck v. San Antonio, 51 Texas, 492; Gunter v. Land Mortgage Co., 82 Texas, 502; Adams v. Water Co., 86 Texas, 485; State v. Shadle, 41 Texas, 404; Bills v. State, 42 Texas, 305.

Section 36, article 3, of the Constitution provides: "No law shall be revived or amended by reference to its title; but in such case the act revived or section or sections amended shall be re-enacted and published at length." A comparison of the provisions of this act with articles 2447, 2453, 2460, and 2464 of the Revised Civil Statutes, and articles 1081, 1083, and 1086 of the Code of Criminal Procedure, leads to the inevitable conclusion that this act is truly and substantially an amendment to said articles. In legislation, "amendment" means "an alteration in the draft of a bill proposed, as in a law · already· passed." Rapalje & Lawrence's Law Dictionary, "Amendment;" 23 Am. and Eng. Enc. of Law, 282; Smails v. White, 4 Neb., 353; Sovereign v. State, 7 Neb., 409; Steicklett v. State, 31 Neb., 674; In re House Roll 284, 31 Neb., 505.

Section 57, article 3, of the Constitution provides: "No local or special law shall be passed unless thirty days notice shall have been previously published." This act was passed and approved less than thirty days after the Governor issued his proclamation convening the session (see General Laws Called Session, 1897); and there is no pretense that it was passed as a local or special law. It must be sustained, if at all, as a general law. What is a general law? As said in Janes v. Reynolds, 2 Texas, 252, "They are now, in their most usual acceptation, regarded as general public laws, binding all the members of the community, under similar circumstances, and not partial or private laws affecting the rights of private individuals or classes of individuals."

As this act does not apply to all the sheriffs in Texas, but only to those in counties where 3000 or more votes were cast, it is not equal and uniform. It is class legislation,—but it is conceded that all class legislation is not inhibited by the spirit of the Constitution. The Legislature may classify persons, subjects, or objects, and enact laws applying to such classes; such legislation is a departure from the general rule of uniformity, and is justified and upheld upon the ground of necessity. For an illustration of the doctrine of class legislation under this rule see Hayes v. Missouri, 120 U. S., 68; Railway v. Mackey, 127 U. S., 205; Walston v. Nevin, 128 U. S., 578; Pacific Express Co. v. Seibert, 142 U. S., 339; Railway v. Wright, 151 U. S., 470; Railway v. Mathews, 165 U.

S., 1. These decisions are generally with respect to railroad legislation and exercise of police power.

We concede the proposition, so far as this particular point is involved, that if the attempted classification of sheriffs, etc., for legislative purposes, attempted by the act, can be maintained, then the law would not be in conflict with the spirit of the Constitution. Now what we claim is that the attempted classification is artificial and arbitrary, and an at-tempted evasion of the constitutional provision prohibiting the enact-ment of special or local laws. 1 Thomp. on Corp., 593; Edmonds v. Herbrandson, 50 N. W. Rep., 970; Darcy v. Mayor, 38 Pac. Rep., 500; State v. Hoagland, 16 Atl. Rep., 166; Waterworks v. Waterworks, 44 N. J. Eq., 427; Richards v. Hammer, 42 N. J. Law, 435; Railway v. El-lis, 165 U. S., 150; Appeal of Ayars, 122 Pa. St., 266; People v. Railway, 23 Pac. Rep., 303; State v. Boyd, 19 Nev., 43; Closson v. Trenton, 48 N. J. Law, 438; Bray v. Hudson County, 50 N. J. Law, 82; Utsy v. Hiott, 9 S. E. Rep., 338; Miller v. Kister, 68 Cal., 142.

In Tennessee, where the courts have pushed the doctrine of classifi-cation to its full limit in sustaining class legislation, it is well established in that State that the statutory classification, to be constitutional, must be natural and reasonable, and not arbitrary, and must rest on sound legal ground. See Breyer v. State, 50 S. W. Rep., 770; Railroad v. Har-ris, 99 Tenn., 704; Henley v. State, 98 Tenn., 698; Demoville v. David-son County, 87 Tenn., 218; Fulk v. Board, 46 Ind., 150; Henderson v. State, 137 Ind., 552; State v. Krost, 140 Ind., 41; State v. Boice, 140 Ind., 506; Legler v. Paine, 45 N. E. Rep., 604.

*T. S. Smith,* Attorney-General, and *R. H. Ward,* Assistant, on behalf of respondent, cited and discussed; Harwood v. Wentworth, 162 U. S., 562; State v. Judges, 21 Ohio St., 1; Groesch v. State, 42 Ind., 547; Hanlon v. Commissioners, 53 Ind., 123; State v. Reitz, 62 Ind., 159; Henderson v. State, 137 Ind., 553; Legler v. Paine, 45 N. E. Rep., 604; Anderson v. Sullivan, 75 N. W. Rep., 9; Winston v. Stone, 43 S. W. Rep., 397; State v. Fogus, 19 Nev., 247; State v. Ream, 16 Neb., 681; Baldwin v. Goldfrank, 9 Texas Civ. App., 274; same case, 88 Texas, 260.

GAINES, CHIEF JUSTICE.—At the called session of the Twenty-fifth Legislature, a statute was enacted for the purpose of limiting the com-pensation of certain officers and reducing the fees of office. It specially reduced certain fees of sheriffs and constables in certain counties of the State. Laws 1897, Called Sess., p. 5. Tarrant County belonged to the class to which the law applied. Sterling P. Clark is the sheriff of that county, and, having rendered services as such for which he was entitled to be paid by the State, he made out account therefor, charging the fees allowed by the law as it existed before the act was passed. His account was approved by the district judge and was presented to the Comp-troller, who refused to allow the same for the fees as charged, but offered

to draw his warrant for the amount authorized by the new law. The sheriff, as relator, has filed in this court this, his original petition for the writ of mandamus against the Comptroller, as respondent, ·to compel the latter to draw his warrant for the amount of the account as charged by him and as allowed by the district judge. The respondent has demurred to the petition. If the Act of June 16, 1897, is valid, the mandamus must be denied; if invalid, the writ should issue.

Therefore the validity of the act is the question for our determination.

The validity of the statute is assailed upon several grounds. First, it is contended that it is in conflict with section 35 of article 3 of the Constitution. This section provides that "No bill, except general appropriation bills, * * * shall contain more than one subject, which shall be expresed in its title." The evident purpose of the act is to reduce fees and to limit the compensation of district attorneys and of certain county officers in certain of the larger counties of the State. The underlying theory of the law was that in the more populous counties of the State the officers named in it were receiving a compensation in excess of the value of their services. It reduces fees throughout the State for certain services, and fees of the sheriffs in certain counties, and limits the compensation of other county officers and district attorneys. It also attempts to regulate the appointment of deputies in certain cases. All these matters have one general object and relate to the one subject of the compensation of the State's officers, except possibly the last. It matters not, in our opinion, that the act prescribes fees both in criminal cases and in civil actions; and that since the adoption of our Code of Criminal Procedure these two classes of fees have usually been provided for in separate enactments. The title of the act is as follows: "An act to fix certain civil fees to be charged by certain county and precinct officers, and to fix and limit the fees and compensation of clerks of the district court, district attorneys, county attorneys, sheriffs and constables in felony cases, to be paid by the State, and to fix the compensation of assessors and collectors of taxes, and to limit and regulate the compensation of the sheriff, clerk of the county court, county judge, district and county attorney, clerk · of the district court, assessor and collector of taxes, justices of the peace, and constables, and to prescribe penalties for the violation of this act, and to repeal all laws in conflict herewith." With the exception of the appointment of deputies, the subject matter of the bill seems to us very fully expressed in the title. The provision in regard to deputies was intended to limit their number and fix their compensation, but whether it is germane to the subject of the act and sufficiently within the purview of the title as to bring it within the rule of the Constitution under consideration, we need not pause to inquire. No question in regard to that provision is directly involved in this proceeding. The section of the Constitution from which we have already quoted has this additional provision: "But if any subject shall be em-

braced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." It follows that if the matter of the appointment of deputies does not come within the compass of the title, it goes for naught; but the vice does not otherwise affect the law. The act stands as if the obnoxious provision had never been inserted. Our conclusion is that the statute in question, in so far as it regulates the compensation of officers and their fees, is not in conflict with section 35 of article 3 of the Constitution. The cases of State v. Shadle, 41 Texas, 404, and Bills v. State, 42 Texas, 305, relied on by counsel for the relator, are not at all satisfactory to us. In the former, the statute was held inoperative before they reached the constitutional question; and when reached, the court merely say: "It also embraces more than one object and is repugnant to the provisions of the Constitution on this subject." What the two or more objects were is not pointed out by the court and they are not apparent to us. In the latter case (which, by the way, was dismissed for the want of jurisdiction), the court simply refer to the decision in the former case.

It is also insisted that the act in question is an amendment to various provisions of our Revised Statutes which prescribe the fees and fix the compensation of the officers named therein; and that it is therefore prohibited by section 36 of article 3 of the Constitution. That article provides that "No law shall be revived or amended by reference to its title; but in such case the act revived or the section or sections amended shall be re-enacted and published at length." A similar question was certified for the decision of this court in the case of Snyder v. Compton, 87 Texas, 347, and in disposing of it, the court say: "It is not meant by this provision that every act which amends the statutory law shall set out at length the entire law as amended. Under such a rule, legislation would in many instances be impracticable. This is especially the case in this State, where the existence of the common law is due to statutory enactment. The practice which it was the purpose of the provision in question to prohibit was that of amending a statute by referring to its title, and by providing that it should be amended by adding to or striking out certain words, or by omitting certain language and inserting in lieu thereof certain other words. It was not intended to prohibit the passage of a law which declared fully its provisions without direct reference to any other act, although its effect should be to enlarge or restrict the operation of some other statutes. Similar provisions in other Constitutions have been construed not to apply to implied amendments." There is no attempt in the act in question to amend any law "by reference to its title," and hence it would seem that section 36 has no application whatever.

In the next place it is urged that the act in question is repugnant to that section of the Constitution which prohibits the passage of special or local laws in certain specified cases and in every case where a

general law may be made applicable. Art. 3, sec. 56, of the Constitution of 1876. The ground of the contention is that most of the vital provisions of the act are, by its terms, made applicable to a minority only of the counties in the State. Its most important provisions do not apply to counties in which the vote at the last election for president was less than 3000. Does this make a local or special law within the meaning of section 56 of article 3 of the Constitution? We might rest our determination of the question upon a former decision of this court. A similar provision to that embraced in the section in question was incorporated in the Constitution of 1869 by an amendment which took effect by ratification of the two houses of the Legislature in January, 1874. Sayles' Const., art. 476. On the 23d day of March, 1874, the same Legislature which ratified the amendment (as was required by that Constitution) passed an act "for the encouragement of stockraising and for the protection of stockraisers," which contained many important provisions and from the operation of which more than fifty counties of the State were exempted by name. The question of the validity of the act came before the court in Beyman v. Black, 47 Texas, 558, and it was held valid. The court, in their opinion, say: "The act in question is general in its terms and in its operation, save in certain specified counties, and can with no propriety be termed a local or special law. Indeed, it has not been argued that the act violates any of the provisions of the constitutional amendments of January, 1874, forbidding local or special laws in certain enumerated cases, and providing that 'in all other cases, where a general law can be made applicable, no special law shall be enacted;' and that 'the Legislature shall pass general laws providing for the cases before enumerated in this section, and for all other cases which, in its judgment, may be provided by general laws.' Laws 14th Leg., 235." If that act was not a local or special law, clearly the statute under consideration is not.

But we do not find it necessary to repose upon the former ruling of the court. A law is not special because it does not apply to all persons or things alike. Indeed, most of our laws apply to some one or more classes of persons or of things and exclude all others. Such are laws as to the rights of infants, married women, corporations, carriers, etc. Indeed, it is perhaps the exception when a statute is found which applies to every person or thing alike. Hence it can not be that the statute under consideration is special merely because it is made to operate in some counties of the State and not in others. The definition of a general law as distinguished from a special law given by the Supreme Court of Pennsylvania in the case of Wheeler v. Philadelphia, 77 Pennsylvania State, 338, and approved by the Supreme Court of Missouri is perhaps as accurate as any that has been given. State v. Tolle, 71 Mo., 645. The court in the former case say: "Without entering at large upon the discussion of what is here meant by a 'local or special law,' it is sufficient to say that a statute which relates to persons or things as a class is a general law, while a statute which relates to par-

ticular persons or things of a class is special, and comes within the constitutional prohibition." The law in question is applicable to every county of the designated class. Now we do not propose to be led off into any extended discussion as to what is a proper class for the application of a general law. The tendency of the recent decisions upon the subject, as it seems to us, is to drift into refinements that are rather more specious than profitable. It is said in some of the cases that the classification must be reasonable, in others that it must not be unreasonable or arbitrary, etc. If it is meant by this that the Legislature can not evade the prohibition of the Constitution as to special laws by making a law applicable to a pretended class which is, in fact, no class, we concur in the proposition. Such was the law passed upon in the case of Commonwealth v. Patton, 88 Pennsylvania, 258. That statute was made applicable to all counties in which there was a population of more than 60,000 and an incorporated city with a population exceeding 8000 "situate at a distance from the county seat of more than twenty-seven miles by the usually traveled public road." There was but one city in the State which came within the pretended class. The court held this a covert attempt at special legislation and that the act was a nullity: It seems that in Pennsylvania there has been a studied and constant effort by the Legislature to evade the constitutional requirement of that State as to local and special legislation, and that the Supreme Court of that State has found it necessary to repress it with a strong hand. In so far as the courts which undertake to define the basis upon which the classification must rest hold that the Legislature can not, by a pretended classification, evade a constitutional restriction, we fully concur with them. But if they hold that a classification which does not manifest a purpose to evade the Constitution is not sufficient to support a statute as a general law, merely because in the court's opinion the classification is unreasonable, we are not prepared to concur. To what class or classes of persons or things a statute should apply is, as a general rule, a legislative question. When the intent of the Legislature is clear, the policy of the law is a matter which does not concern the courts. A Legislature may reach the conclusion that the compensation of certain officers in certain counties of the State is excessive, while in others it is not more than enough. By the reduction of the fees of office throughout the State, they may correct the evil in those in which the compensation is too great; but they would probably inflict a greater evil by making the compensation too small in all the others. In such a case, it becomes necessary to make the law applicable to some and not to all. There must be a classification. That classification may be either by population or by taxable values. One Legislature might do as the Legislature of Texas did,—make the classification by population; another, as was done by the Legislature of Arizona, might make the taxable values of the respective counties the basis of the classification. Shall the courts inquire which is correct? Can they say that the work of an officer is not in some degree propor-

tionate to the population of his county? On the other hand, can they say that the more the property of a county, the more the crime? To ask these questions is to make it apparent that they are questions of policy, determinable by the political department of the government,. and not questions the determination of which by the Legislature is subject to review by the courts. Therefore, should we adopt the rule that in order to make an act a general law, the classification adopted should be reasonable, we should still be constrained to hold the statute in question a general law and valid, under our Constitution, for we can not say that the classification is unreasonable. It may be, as urged in the argument, that there are counties in the class to which the law is made applicable, the population of which very slightly exceeds that of other counties which are without it; and that it seems unreasonable to make a discrimination upon so slight a difference. To this the answer is,. the line must be drawn somewhere and that a similar difficulty would probably result if the classification were made upon any other basis. Exact equality in such matters, however desirable, is practically unattainable.

Nor do we think the act in question can be considered a local law within the meaning of the term as used in the provision of the Constitution under consideration. We have found no very satisfactory definition of a local law. But it seems to us that it is one the operation of which is confined to a fixed part of the territory of the State. It is plain from the reading of the statute in question that it was not contemplated that it should have effect in every county of the State. While by the determination of an extrinsic fact, its operation in the main may be restricted to a minority of the counties in the State, still it applies generally to the whole State. Besides, the territory is not fixed, but is subject to change according to the increase or decrease of the population of the respective counties as may appear by the vote. And again, it is held that a statute, although its enforcement be restricted to a fixed locality, is not local in its character, if persons or things throughout the State be affected by it. Williams v. People, 24 N. Y., 405; Healey v. Dudley, 5 Lans., 115.

But, holding as we do, that, as to the question before us, there is no material difference whether the classification be by population or by the taxable value of the counties, we have high authority that a statute of the character of that under consideration is neither a special nor a local law. An act of Congress prohibited the legislatures of the territories of the United States from passing local or special laws in terms similar to those employed in section 56 of article 3 of our Constitution. The territory of Arizona passed a statute, which fixed the compensation of the county officers at different sums, according to a classification of the counties based on the assessed value of property. In Harwood v. Wentworth, 162 U. S., 547, the validity of the act was attacked upon the ground that it was a local or special act and was, as such, prohibited by the act of Congress. The act was held valid, and in disposing of the

question the court say: "We are of the opinion that the territorial act is not a local or special law within the meaning of the act of Congress. It is true that the practical effect of the former is to establish higher salaries for the particular officers named, in some counties, than for the same class of officers in other counties. But that does not make it a local or special law. The act is general in its operation; it applies to all counties in the territory; it prescribes a rule for the stated compensation of certain public officers; no other of the classes named is exempted from its operation; and there is such a relation between the salaries fixed for each class of counties, and the equalized assessed valuation of property in them, respectively, as to show that the act is not local and special in any just sense."

The fact that the statute prescribes that the county judge shall designate the number of deputies to which certain officers may be entitled is also urged as a ground for holding the act invalid. In discussing the question whether or not the act embraces more than one subject, we have already partially considered this question. But it is especially contended that this provision vitiates the law, because it attempts to devolve a function upon the county judge, which, under the Constitution, can be legally devolved upon the commissioners court only. But we do not concur in the proposition that the determination of the number of deputies which may be employed by an officer is a county affair, within the meaning of that provision of the Constitution which prescribes that the commissioners court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of this State, or as may be hereafter prescribed." Art. 5, sec. 18. The officers to whom the provision applies, though called county officers, are in fact officers of the State (Fears v. Nacogdoches County, 71 Texas, 337); and the number of deputies to be allowed to each can not properly be deemed a county affair. Besides, under the provision quoted, the power of the commissioners court extends only to such business as is intrusted to it by the Constitution and to such as the Legislature may confide to it. The provision does not inhibit the Legislature from committing a matter of county business upon some other agency. But it is also contended that the act is invalid because, by the provision under consideration, the Legislature attempts to confer upon a judicial officer a power which is not judicial. To this it is sufficient to answer that the county judge is not a judicial officer only. When holding sessions of his court, his powers are, as a rule, purely judicial; but, in addition to his duties as a judge, there are various executive and ministerial functions conferred upon him by the Constitution and laws. Besides this, we have held that a court may, if it will, exercise an extrajudicial power conferred upon it by the legislature, such as the removal of the disabilities of a minor. Brown v. Wheetlock, 75 Texas, 385.

The statute provides that those officers whose compensation is limited to a maximum shall pay any surplus of fees received by them, over a

sufficiency to pay their respective salaries and those of their deputies, into the county treasury; and since the State pays certain fees to the district clerks, county judges, and justices of the peace, it is contended that the effect of the law is to take from the revenues of the State, raised by taxation at large, moneys to pay fees of office and to appropriate them to the use of certain counties. If this were shown to be true, however inequitable and out of harmony with the spirit of the Constitution it may seem, we do not see that it violates any special provision of that instrument. He who claims that an act of the Legislature infringes the fundamental law should point out the restriction which is claimed to have been violated. But, unless the fees paid by the State to any particular officer should be more than sufficient to pay his salary, we do not see how it could be said that the tax money was covered into the county treasury. If it were unlawful so to appropriate the State's revenues, it would be deemed that the surplus which was to be paid to the use of the counties was paid from the fees collected from private parties. It has not been shown in this proceeding that the fees of office paid by the State to any officer affected by the act will be more than sufficient to pay his salary; and we gravely doubt whether such fees will be sufficient to pay the compensation of any officer in any county in the State, to which the provision applies.

We conclude that the act in question in this case is valid, and therefore the writ of mandamus is denied.

*Writ of mandamus refused.*