# TEXAS UNDERWRITERS v. MARTINAL.
## No. 3939.

Court of Civil Appeals of Texas. El Paso.
April 18, 1940.

Cameron & Hardin, of Edinburg, for appellant.

West & Hightower, of Brownsville, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of one of the District Courts exercising jurisdiction in Cameron County. Plaintiff, Alfred Martinal, recovered judgment against defendants R. G. Treon and the Texas Underwriters in the sum of $846.93. The defendant last named perfected an appeal from such judgment. Defendant Treon was sued for the purchase price of certain citrus fruit, and the appealing defendant was joined as a surety upon a bond executed by Treon as principal with National Indemnity Underwriters of America as surety; the Texas Underwriters had, subsequent to the giving of the bond, assumed the liability thereof. The bond was given by Treon as a licensed "maximum dealer" in citrus fruit under House Bill No. 99, c. 236, Acts of the 45th Legislature, as amended by Senate Bill No. 24, Acts of the First Called Session of the 45th Legislature; in Vernon's Statutes, Article 118b and Article 1287—2.

Treon answered by general exception and general denial. A general demurrer and numerous special exceptions were filed by the defendant Texas Underwriters, and likewise an answer to the merits.

The main question involved in the appeal is the constitutionality of the Act of the Legislature in pursuance of which the bond was given. Appellant asserts that the Act violates the Constitution of the State in many particulars, and likewise violates the Constitution of the United States.

On account of the length of the Act we shall not set same out in full, but shall attempt to give the substance thereof as to the matters in question here.

It provides one shall not be a dealer in citrus fruit unless he apply to the Commissioner of Agriculture for a license as such, receive such license, and file and have approved the five thousand dollar bond required by the Act. This bond, conditioned as required by law, guarantees the payment by the dealer of fruit purchased on credit. Under the terms of the law and the bond anyone dealing with such licensed dealer may maintain action on same. If the Commissioner refuse the license, the law gives the applicant a right to appeal to the courts, and if, under the authority conferred on the Commissioner, said license be revoked, the right of appeal to the courts is also given. Venue of any criminal acts and civil suits under the Act is to be in the county where the violation of the Act occurred, or where the citrus fruit was delivered. The Commissioner of Agriculture is given broad and general powers for the enforcement of the Act.

Appellant's principal was a "maximum dealer" as defined by subsection (e) of Section 1 of the Act in question, having made application for and received a license as a dealer as provided for in the Act. The bond filed and approved by the Com-

missioner was in the sum of five thousand dollars, payable to the Governor, and conditioned in part, in substance, as follows: That the principal should honestly comply with the provisions of House Bill No. 99 and House Bill No. 557, c. 443, as passed by the Regular Session of the 45th Legislature of Texas, as amended by S.B.No. 24, passed by the First Called Session of the 45th, Legislature, Vernon's Ann.Civ.St. art. 1287—1.

■■ An Act of the Legislature is entitled to the presumption of constitutionality. Unless it clearly is in violation of the Constitution the court must hold same was within the power of the Legislature, and apply and enforce the law. The dominion of the Act extends over the institutions through which the government functions, as well as over each citizen. 16 C.J.S. Constitutional Law, § 99, p. 250, par. 99, and authorities cited; 11 American Jurisprudence, p. 776, § 92, and § 128, and authorities cited.

■■ The Act in question is regulatory in its nature, even though a license fee is exacted from the dealer. This license fee is by nature of the provisions of the Act not a tax, but strictly what it purports to be. Power of enactment must be considered from the standpoint of the police power of the State. This great and general power has never been entirely delimited and defined. Its source is the sovereignty of the State. Exercise of this power is for the Legislature. In lawful pursuance of same the Legislature may enact any measure which may be reasonably said to promote the health, safety, comfort or welfare of the inhabitants of the State, provided such power is not withheld or limited by the provisions of the Constitution. Sid Westheimer Co. v. Piner, Tex.Civ.App., 240 S.W. 985; Id., Tex.Com.App., 263 S.W. 578.

The basis of the attack made here on the Act is that it is not a valid exercise of the police power, in that it unreasonably and unwarrantably restricts the right to pursue a lawful business and interferes with the primary right of freedom of contract.

We shall first discuss the question from that broad standpoint, later disposing of the more specific questions involved in the attack not comprehended in the general discussion. Throughout it is to be borne in mind, however, only those provisions of the Act requiring the license and the

bond are directly involved here. The appellant has not been refused a license, and a license held by it has not been revoked.

The San Antonio Court of Civil Appeals has held the Act in question constitutional. Attack on the law was there made on grounds almost identical with the attack here. In the case of Berry v. McDonald, Commissioner of Agriculture, Tex. Civ.App., 123 S.W.2d 388, the Act was held to be within the police power of the State. It was further held that the Act was not subject to the limitation contained in the Constitution against class and discriminatory legislation. The above holding is sustained by the great weight of authority throughout the United States. In the notes appearing in 3 A.L.R. 1271; 48 A.L.R. 453; 84 A.L.R. 640; 101 A.L.R. 827; and 117 A.L.R. 347, there is a collection of authorities on this point. There is also a comprehensive discussion of the power to require a bond to guarantee private contracts in connection with the licensing of a business or occupation. The collection of authorities in the above-cited notes seems to be comprehensive and complete. In the annotation, 3 A.L.R. 1271, supra, the following principle is set forth: "Since the State or a municipality may regulate any business, however lawful in itself, which may be so conducted as to become the medium of fraud and dishonesty, a requirement of a bond to insure creditors of the business against financial loss is a valid enactment, and is not class legislation, if the requirement is based on reasonable grounds and is not essentially arbitrary."

Numerous authorities, both State and Federal, are cited supporting the proposition. In a supplementary note in 84 A.L.R. 640, the proposition is reiterated and additional authorities are cited and discussed sustaining same.

California has an Act relating to the purchase and handling of deciduous fruit adopted in 1929, Statutes 1929, p. 665. There is great similarity between our legislation and that of California. The California legislation seems to be more inclusive and drastic in its provisions than is our Act. In the case of People v. Perry, 212 Cal. 186, 298 P. 19, 76 A.L.R. 1331, there was before the Supreme Court of California a penal provision of the Act relating to the punishment of a "cash buyer" failing to meet his obligations.

Under an attack, in a great measure paralleling the attack here made on our law, the legislation was upheld. In the attack it was there asserted, as here asserted, that the Dealers' Act interferes with the freedom of contract, and is a deprivation of liberty and property without due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States. In support of its holding denying the validity of the contention the court cites and discusses the case of Merrick v. N. W. Halsey & Co., 242 U.S. 568, 37 S.Ct. 227, 231, 61 L.Ed. 498. The following is quoted therefrom: "We think the statute under review is within the power of the state. It burdens honest business, it is true, but burdens it only that, under its forms, dishonest business may not be done. This manifestly cannot be accomplished by mere declaration; there must be conditions imposed and provision made for their performance. Expense may thereby be caused and inconvenience, but to arrest the power of the state by such considerations would make it impotent to discharge its function."

The reasonableness and the necessity for the legislation in question are, in our opinion, evidenced by the fact that California and Florida, two great citrus producing areas, each has similar laws regulating this industry. In Arizona, likewise, a bond is exacted from a dealer in citrus fruit. The four citrus producing areas of the United States have each legislation in substance and nature the same regulating this industry.

■ A perusal of the Act we are here considering discloses a purpose to protect the producers of citrus fruit from fraud and imposition. This purpose is commendable, and unless the means invoked to that end are unreasonable and arbitrary, the legislation should be held valid. Fostering and protecting of a vast, valuable and rapidly developing industry within the State is vital to the welfare of the people of the State. Berry v. McDonald, Commissioner, supra, and authorities there cited; Ex parte Ferguson, 112 Tex.Cr.R. 153, 15 S.W.2d 650; 3 C.J.S., Agriculture, § 2, p. 367.

■ By the Act a lawful business is not prohibited, but is reasonably regulated and fostered.

■ It is not a local or special law within the meaning of Article 3, Sect. 56, of the Constitution, Vernon's Ann.St. Beyman

v. Black, 47 Tex. 558; Clark v. Finley, 93 Tex. 171, 54 S.W. 343; Reed v. Rogan, 94 Tex. 177, 59 S.W. 255.

■ In our opinion legislative power is not delegated to the Commissioner of Agriculture. By the provisions of the Act, the action of the Commissioner in either refusing or cancelling the license may be called in question before the courts; likewise, due process is provided for in the hearings before the Commissioner.

■ The legislation is not class legislation within the prohibition of the Constitution. Ex parte Ferguson, supra.

All other assignments not discussed challenging the constitutionality of the Act in question have been considered and overruled.

■ We are likewise of the opinion that it may be by voluntarily applying for the license and giving the bond, the right to question in this proceeding its validity was waived. Cooley on Constitutional Limitations, 8th Ed., p. 368; White v. Manning, 46 Tex.Civ.App. 298, 102 S.W. 1160; Young v. City of Colorado, Tex.Civ. App., 174 S.W. 986; Louisiana Ry. & Nav. Co. v. State, Tex.Com.App., 7 S.W.2d 71; Hawkins v. Bleakley, D.C., 220 F. 378; Id., 243 U.S. 210, 37 S.Ct. 255, 61 L.Ed. 678, Ann.Cas.1917D, 637; Hershey v. Reclamation Dist. No. 108, 200 Cal. 550, 254 P. 542; Huson, State Commissioner of Agriculture, v. Richard B. Brown, 90 Misc. 175, 154 N.Y.S. 131; Musco v. United Surety Co., 196 N.Y. 459, 90 N.E. 171, 134 Am.St.Rep. 851.

The case last cited, in referring to a bond given under a somewhat analogous statute uses this apt language: "He (the principal) might well conclude that the giving of the bond would help him in his business whether he could be compelled so to do or not, and he executed one. An individual may waive even constitutional provisions for his benefit when no question of public policy or public morals is involved."

■ The bond sued on is dated the 27th day of November, 1937; the approval of the Commissioner of Agriculture is dated the 20th day of December, 1937. It is shown by the agreed statement of facts that all of the fruit, the price of which is herein sued for, was delivered to Treon prior to the 20th day of December, 1937, except deliveries made on March 9, 1938,

and April 16, 1938. The agreed price for the said last two named deliveries aggregates $271.27. On November 26th, 27th, 29th and 30th there were deliveries made aggregating $975.66. Between November 26th, 1937, and January 1st, 1938, Treon paid to plaintiff the sum of $400 on this account.

The bond, by its very terms, is for the period of the license; license, under the provisions of the law, may not be issued until the bond has been approved by the Commissioner.

In our opinion the law is not retroactive by its provisions; it was not made with reference to past or existing obligations of the principal, but contemplated therein were the future obligations of the principal.

In our opinion the obligation due from the appealing defendant to the plaintiff is the sum of $271.27, with interest thereon at the rate of six per cent per annum from the date of the default.

It is ordered that the judgment of the trial court be so modified, and, as so modified, same is affirmed.