

# THE ATTORNEY GENERAL
# OF TEXAS

**AUSTIN, TEXAS 78711**

**JOHN L. HILL**
**ATTORNEY GENERAL**

October 15, 1973

The Honorable Jimmie D. Oglesby          Opinion No. H- 127
County Attorney
Permian Building                         Re: Use of Federal Revenue
317 West Texas                                Sharing Funds to contract
Midland, Texas 78701                          with a private non-profit
                                              corporation for the crea-
                                              tion and maintenance of
                                              a recreation center for the
Dear Mr. Oglesby:                             indigent aged

        You have asked our opinion as to whether a county may use federal
revenue sharing funds for purposes authorized under the Federal statute
"but <u>not</u> authorized under the State Constitution or statutes." You state
that the commissioners court has been approached by a group of interested
citizens who have asked that federal revenue sharing funds be contributed
toward the creation and maintenance of a recreation center for the aged.
The center will be operated by a private non-profit corporation which is to
charge small annual dues to those who can afford to pay and will provide
social and recreational services to all senior citizens, whether they be
indigent or not.

        The facts would seem to raise two questions: (1) Is the suggested
use one which would be authorized under the Federal law and (2) Is it in
fact one which is authorized under the State constitution and statutes.

        The State and Local Fiscal Assistance Act of 1972 (31 U. S. C. § 1221)
authorizes the county, as a local government, to use revenue sharing funds
to create, maintain and operate a recreation center for the aged. Section
1222 provides:

            "(a) In general -- Funds received by units of
        local government under this subchapter may be used
        only for priority expenditures. For purposes of this
        chapter, the term 'priority expenditures' means only--

"(1) ordinary and necessary maintenance and operating expenses for --

" . . . .

"(E) recreation . . . .

" . . . .

"(G) social services for the poor or aged. . . ."

The rules and regulations published by the Office of Revenue Sharing in the Federal Register of Tuesday, April 10, 1973 (Volume 38, No. 68), pp. 9132-9143), likewise approve the use of revenue sharing funds for such purposes (31 C.F.R., §51.31), and the legislative history of the act is replete with references to the basic purpose of the legislation as providing "additional help for the states and localities in a form which will give them greater flexibility in the use of the funds. . . ." (Senate Report No. 92-1050, August 16, 1972).

Pursuant to The State and Local Fiscal Assistance Act, the Secretary of the Treasury has issued a regulation [31 C.F.R. § 51.40(c)] providing that a government which receives entitlement funds under the Act shall provide for the expenditure of those funds in accordance with the law and procedures applicable to the expenditure of its own revenues.

Funds received under the State and Local Fiscal Assistance Act may not be used for a purpose not authorized by that Act or by the Constitution and statutes of Texas. However, it is our opinion that the creation and maintenance of a recreation center for the aged may be authorized under state law.

We recognize that the county and its governing body, the commissioners court, can exercise only such power as the Constitution and statutes of the State of Texas have specifically conferred upon it and that the commissioners court does not have any general authority over county business. Canales v. Laughlin, 214 S.W. 2d 451, (Tex. 1948); Clark v. Finley, 54 S.W. 343, 347 (Tex. 1889); Article 5, §18, Texas Constitution.

The general grant of powers to the commissioners courts is found in Article 2351, Vernon's Texas Civil Statutes. It does not authorize the construction or maintenance of recreational facilities per se. . It does authorize the commissioners to "provide and keep . . . all necessary public buildings," and directs them to "provide for the support of paupers."

We find authorization in Article 1015c-1, V. T. C. S., which, after defining a governing body as including a county commissioners court, provides:

> "Sec. 3. Any government unit may establish, provide, acquire, maintain, construct, equip, operate, and supervise recreational facilities and programs. . . ."

The Act specifically provides that the costs and expenses of carrying out the provisions quoted above may be paid from the general revenues of the county or from other revenue, including grants, and authorizes joint action by two or more governmental units in the maintenance of the facility. This has been held to authorize a county, for instance, to establish and maintain a public golf course on land owned by a city. Attorney General Opinion M-804 (1971).

It is our opinion, therefore, that the county may, itself, construct and maintain a recreational facility for the use of the public and primarily for the use of the aged, under reasonable regulations. It may use federal revenue sharing funds for these purposes. The only remaining question is whether the Constitution or statutes prohibit a county from achieving these purposes through an agreement with a private non-profit corporation.

Section 52 of Article 3 of the Constitution of Texas provides in subsection (3):

> "Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant

public money or anything of value in aid of, or to
any individual, association or corporation whatsoever,
or to become a stockholder in such corporation, asso-
ciation or company. "

The current construction of this provision is that it does not pro-
hibit the Legislature from authorizing a county, city or other political
corporation or subdivision to spend its funds with private corporations
for the achievement of public purposes. See, for example, State v. City
of Austin, 331 S. W. 2d 737 (Tex. 1960) and Bullock v. Calvert, 480 S. W.
2d 367 (Tex. 1972).

It is not unusual for political subdivisions to contract with private
corporations to perform services or functions which the governmental
unit might have provided itself. For instance, in Attorney General Opin-
ion C-246 (1964), it was held, after a very thorough discussion of the law,
that a commissioners court could contract with a private entity for the
care of indigent aged in a private facility. In Attorney General Opinion
C-334 (1964), it was held that a hospital district could pay private hospitals
for the care of indigent patients.

In Attorney General Opinion M-843 (1971), it was held that Potter
County could contract with a private non-profit institution for the care
and supervision of juvenile delinquents. Other examples might be cited
but we deem the foregoing amply sufficient to support our conclusion that
a county may contract with a private non-profit corporation for the purpose
of creating and maintaining a recreational center designed for aged persons
under the same terms and conditions that the county itself could create and
maintain such a center.

## SUMMARY

A county may accept and use Federal revenue sharing
funds to contract with a private non-profit corporation to
construct, operate and maintain a recreational facility de-
signed primarily for the aged.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

LARRY F. YORK, First Assistant

DAVID M. KENDALL, Chairman