RICE & LYON, RECEIVERS KIRBY LUMBER COMPANY, v. MAGGIE R. LEWIS ET AL.

Decided February 17, 1910.

**1.—Railroad—What Constitutes—Statute Construed—Cases Followed and Overruled.**

A tram-road upon which steam locomotives and log cars and ordinary flat cars were operated by a lumber company for the exclusive purpose of hauling logs to its mills, is a "railroad" within the meaning of article 3017, Rev. Stats., concerning the liability of persons or corporations operating a

"railroad" for injuries to their employees resulting in death. Receivers of Kirby Lumber Co. v. Ownes, 56 Texas Civ. App., 370, followed; Ott v. Johnson, 101 S. W., 534, overruled.

**2.—Jury—Selection—"Jury Wheel" Law—Cases Followed.**

The cases of Smith v. State, 54 Texas Crim. App., 298; Lee v. State, 54 Texas Crim. App., 382, and Northern Texas Traction Co. v. Danforth, 53 Texas Civ. App., 419, followed in holding that the Act of 1907 (Gen. Laws, 1907, p. 269), concerning the selection of juries in certain counties, is not in violation of sec. 56, art. 111 of the State Constitution forbidding the passage of local or special laws except in certain cases.

**3.—Master and Servant—Railroad Employee—Assumed Risk—"Defect and Danger"—Statute.**

The terms "defect and danger" as used in the Act of 1905 (Gen. Laws, 1905, p. 386), abolishing the defense of assumed risk in suits by railroad employees for personal injuries, are broad enough to include and do include any defective or improper and dangerous manner in which a railroad train may be made up and operated, resulting in injury to an employee.

**4.—Statute—Construction—Emergency Clause.**

The construction of a statute should not always be controlled by the terms of an emergency clause attached thereto. The purpose of an emergency clause and the lack of any necessity that it should be clear and specific in its terms precludes the idea that there was any intention that it should have the effect of limiting the terms employed in the body of the Act.

**5.—Negligence—Contributory Negligence—Question of Fact.**

Except when the evidence is undisputed, the issues of negligence and contributory negligence are always issues of fact to be determined by the jury. In a suit by a railroad employee for personal injuries caused by the derailment of a railroad logging train, while being operated in the usual and customary manner well known to the plaintiff, evidence considered and held to require the submission of the issues of contributory negligence and assumed risk to the jury and sufficient to support their finding against the defendant.

**6.—Contributory Negligence—Test.**

It does not necessarily follow that an employee will be guilty of contributory negligence by continuing in employment where he is exposed to dangers from the negligence of the employer in the matter of defects in the appliances and machinery furnished the employee even though the employee has knowledge thereof. It is always a question whether a person of ordinary care would have so continued.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*C. R. Wharton* and *Jno. G. Logue*, for appellants.—Defendants Rice and Lyon, as receivers of the Kirby Lumber Company, could not be held liable for injuries resulting in death. They are not embraced within article 3017, Revised Statutes of the State of Texas, commonly called the "Death Statute." Article 3017, Rev. Stats.; Parker v. Dupree, 28 Texas Civ. App., 341; Ott v. Johnson, 101 S. W., 534; Missouri, K. & T. Ry. Co. v. Freeman, 97 Texas, 394; Halbert v. Texas Tie & P. Co., 20 Texas Ct. Rep., 990; Asher v. Cabell, 50 Fed., 818; Fleming v. Texas Loan Agency, 87 Texas, 238; Wade v. Lutcher & Moore Lumber Co., 74 Fed., 519; Hendrick v. Walton, 69 Texas, 192; Northwestern Ins. Co. v. Gridley, 11 Fed. Cases, Case No. 5808, also found in 14 Blatchford, 107, 100 U. S., 614.

The jury-wheel law passed by the Thirtieth Legislature is unconstitutional and void, it being a special law.

Regardless of the question or issue of assumed risk, we submit that, if the manner and method of making up and operating this train of cars was negligent, or a failure on defendants' part to use ordinary care, then, under the undisputed facts, the deceased, Lewis, was guilty of contributory negligence in continuing indefinitely in the employment and actively assisting in the operation of the business in this way, and it follows as a matter of law that he would not be in the exercise of ordinary care in continuing in the service of defendants. Hence this issue should not have been submitted to the jury. Quill v. Houston & T. C. R. Co., 93 Texas, 616.

*Lovejoy & Parker,* for appellees.—Defendants Rice and Lyon were receivers in charge or control of a railroad within the meaning of subdivision 1 of article 3017, Revised Civil Statutes of this State. Rev. Stats., article 3017, subd. 1; Bammel v. Kirby, 19 Texas Civ. App., 198; Receivers Kirby Lumber Co. v. Owens, 56 Texas Civ. App., 370; Lodwick Lumber Co. v. Taylor, 39 Texas Civ. App., 302; Cunningham v. Neal, 101 Texas, 338; Anderson's Dict. of Law, word "Goods;" Words and Phrases, "Goods;" Murphy v. Board of F. H. of M. County, 31 Atl., 230.

The jury-wheel Act has been held to be constitutional by our Court of Criminal Appeals, in an opinion which counsel believe conclusively establishes that proposition. Smith v. State, 54 Texas Crim. App., 298.

The receivers were operating a railroad within the meaning of the assumed risk Act of 1905, and whether the death of David Y. Lewis was caused by defects and dangers which he assumed by reason of knowledge thereof depended upon whether a person of ordinary care would have continued in the service with knowledge of the defects and dangers, and this was a question to be determined by the jury in the light of the attending circumstances. Assumed Risk Statute, Act of 1905; Sayles' Supplement to Texas Civil Statutes, 1906, p. 485; Currie v. Missouri, K. & T. R. Co., 101 Texas, 478; Houston & T. C. Ry. Co. v. Alexander, 102 Texas, 497; Cunningham v. Neal, 101 Texas, 338.

REESE, ASSOCIATE JUSTICE.—This is a suit instituted by Maggie R. Lewis, surviving widow of D. Y. Lewis, in her own right and as next friend of the minor children of herself and the said D. Y. Lewis, against the Receivers of the Kirby Lumber Company, a corporation, to recover damages for the death of the said Lewis, alleged to have been caused by the negligence of defendants, their agents and servants.

It is alleged that the Kirby Lumber Company is a private corporation, and that defendants are in charge of the property and business of the corporation as receivers, and that at the date of the accident which caused the death of Lewis he was in the employment of said receivers and was engaged in the performance of his duty as a brakeman on one of its logging trains, running from a sawmill of the

said lumber company at Village Mills, a distance of twenty-seven miles, into the woods for the purpose of hauling logs to said sawmill. It was charged that while so engaged the said Lewis was killed by the derailment of the train caused by running over some cows on the track, and various acts of negligence on the part of defendants, their agents and servants in the making up and operation of said train are alleged to have been the proximate cause of the accident and consequent death of Lewis.

Defendants urged a general demurrer to the petition, which was overruled, and pleaded the general issue, and, specially, that the Kirby Lumber Company was a purely private corporation, and was not engaged in operating a railroad, within the meaning of the statute with regard to the recovery of damages for injuries resulting in death; that whatever negligence there was was the negligence of Lewis himself in making up the train in the manner it was operated. It was further alleged, with specific allegations as to the details, that Lewis assumed the risk of the danger from which he came to his death, and that he was guilty of negligence proximately causing or contributing to his death.

The case was tried with a jury, who returned a verdict for plaintiffs for $14,000. Their motion for a new trial having been overruled, defendants appeal.

*Conclusions of fact.*—The Kirby Lumber Company is a private corporation, the purpose for which it was created being, in substance, to do a general sawmill business, including the purchase, lease, erection and operation of all necessary sawmills, planing mills, dry kilns, tram roads and all other necessary incidents to such business in the manufacture and sale of lumber. As a part of its business the company owned and operated a railroad, commonly known as a tram road or logging road, running from one of its sawmills at Valley Mills into and through the timber for a distance of twenty-seven miles, which was used for the purpose of "logging" said mill. This tram road was built like an ordinary railroad. Various switches and branches had been built from time to time from the main tram into the woods for the purpose of reaching the timber. About eighty cars and two locomotive engines were used on the tram road. About half of these cars were log cars and the other half ordinary flat-cars, such as are commonly used on an ordinary railroad, all of them used for the purpose of hauling logs to the company's sawmills. There are no stations along the line of this railroad, and no freight or passengers were ever hauled over it for hire, and the persons operating the trains over the road had no authority to carry freight or passengers other than the property of the lumber company.

Rice and Lyon were the receivers of the Kirby Lumber Company under appointment of the United States District Court, and at the time of the accident to Lewis were engaged in carrying on the business of said company as such receivers, including the hauling of logs over the tram railroad aforesaid.

At the time Lewis was killed he was in the employ of the receivers as a brakeman on one of its trains on the road aforesaid. This train

was made up at Village Mills and started for the timber a little before daylight on the morning of March 19, 1907. There were about twenty-four cars in the train—fifteen flat-cars and nine skeleton or logging cars—and, as the train was made up, the engine was running backwards, pushing the flat-cars, which were thus in front as the train was moving, and pulling the skeleton cars, the engine being thus in the middle of the train. It was dark; there was no headlight burning on the engine, which would in fact have been useless. Lewis was riding on the front platform of the foremost flat-car, which placed him at the front end of the train as it was moving. He had an ordinary lantern in his hand, which was the only light at that end of the train. This was his usual and proper place in the operation of the train. Moving in this way, the flat-car on which Lewis was riding ran over some cattle lying on the track and was derailed; Lewis was thrown off and killed. The road was not fenced, and cattle were in the habit, at certain parts on the line, of lying upon the track at night. Lewis was well acquainted with the manner of doing the business and, in fact, all of the surroundings, having been working for the company for about a year and a half, and during the entire time of his employment had gone out daily with the crew on this train, which had been uniformly equipped and operated in this way, and he rode on the front end of the train as on this occasion. At Village Mills the lumber company had no turntable nor "Y" for the purpose of turning the engine around, so that when it came in pulling a train of logs these were placed upon sidetracks and the engine hitched on to empty cars, and in this way went back to the woods, and the uniform custom was that, in making up such train, the flat-cars would run in front and the logging cars in the rear, the engine running backwards between.

There was a conflict in the evidence as to the speed of the train at the time of the accident and whether it was being run at an unsafe rate of speed in the circumstances. The court submitted to the jury the issue of negligence in this regard, and there is no objection made in the assignments of error that the evidence did not authorize the submission of this issue or that it was not sufficient to support an affirmative finding thereon. So we find, in deference to the verdict, that the evidence on this issue was sufficient to authorize the finding of negligence on the part of the engineer in this particular, as well as in the manner in which the train was made up and operated in the particulars stated in the petition. No question being made as to the amount of the damages awarded, no finding of the facts upon this issue is necessary.

*Conclusions of law.*—The first assignment of error complains of the ruling of the court in overruling the general demurrer to the petition. Under the assignment the following proposition is stated: Defendants Rice and Lyon, as receivers of the Kirby Lumber Company, could not be held liable for injuries resulting in death, as such receivers. They are not embraced within article 3017, Revised Statutes of the State of Texas, commonly called the "Death Statute."

This precise question was decided by the Court of Civil Appeals of

the Fourth District in the case of Receivers of the Kirby Lumber Company v. Owens, 56 Texas Civ. App., 370 (120 S. W., 936). That was an action against Rice and Lyon, Receivers of the Kirby Lumber Company, by the father and mother of a boy who was killed while in the employment of the receivers by an accident upon one of the tram roads operated by said receivers. The sole question presented upon the appeal was the liability of the appellants under article 3017 of the statutes. The question presented by the proposition above quoted was the only question presented or decided. The court held that such a tram or logging road as was referred to in that case, and in this, was a "railroad" within the meaning of the statute, and that the appellants were liable. A writ of error has been refused by the Supreme Court (October 13, 1909).

We are aware that it has often been said by the Supreme Court that a refusal of a writ of error by that court does not always mean that all the conclusions of the Court of Civil Appeals are approved. But in the case referred to it is impossible to conceive that the Supreme Court would have refused the writ of error, unless that court judicially approved the only principle decided. So we are justified in treating the refusal of the writ of error in the Owens case as a direct decision of the question here presented. We would not be justified in treating it otherwise. Of course it does not follow that the Supreme Court intended to adopt or approve, in all respects, the reasoning by which the Court of Civil Appeals arrived at its conclusion, but that is immaterial.

This precise question was before this Court in Ott v. Johnson (101 S. W., 534), in which a different conclusion was reached. We regard the question as settled against the contention of appellants by the action of the Supreme Court in refusing a writ of error in the Owens case, *supra,* and any further discussion of it here would serve no useful purpose. In the argument at the bar counsel for appellants requested us to certify the question. We do not think it would be proper for us to do so, any more than any other question that had been directly decided by the Supreme Court. The assignment of error is overruled.

The jury in this case was drawn from the "Jury-Wheel" law (Acts Thirtieth Legislature, chap. 139, page 269), regulating the selection of juries "in all counties in this State having a city or cities therein containing a population aggregating 20,000 or more people, as shown by the United States census of the year 1900." Appellants moved to quash the panel on the ground that this law was unconstitutional, which was overruled, to which ruling they took a bill of exceptions, and by their second assignment of error present the question of the constitutionality of this law, especially on the ground that it is a special law, within the inhibition of section 56, article III, of the Constitution.

The constitutionality of this law, as against the objections here urged, has been directly upheld by our Court of Criminal Appeals (Smith v. State, 54 Texas Crim. Rep., 298; Lee v. State, 54 Texas Crim. Rep., 382). The validity of the Act was also sustained by the Court of Civil Appeals in Northern Texas Traction Co. v. Danforth,

53 Texas Civ. App., 419 (116 S. W., 147), following the decisions referred to by the Court of Criminal Appeals. A writ of error was denied by the Supreme Court in the latter case. We consider the question settled against appellants' contention, and the assignment is overruled.

The third assignment complains of the action of the court in refusing to give a special charge requested by appellants instructing the jury to return a verdict for defendants. The first proposition under this assignment is that appellants were not operating a railroad within the meaning of article 3017, Revised Statutes, and has been disposed of. Under the assignment the further propositions are stated that, under the undisputed evidence, the deceased, Lewis, (1) assumed the risk of the accident which caused his death, and (2) that he was guilty of contributory negligence. The court submitted to the jury the issue as to whether Lewis assumed the risk in the following charge:

"Respecting the defendant receivers' defense of assumed risk, you are instructed that knowledge on the part of Lewis of the dangers attending the running of the train made up and equipped in the way it was, if any there was, would not preclude him from recovering if you believe from the evidence that a person of ordinary care would have continued in the service of the defendant receivers with knowledge of such danger, if any, and would have incurred the same at the time and under the circumstances he did, if you believe him otherwise entitled to recover, under the circumstances as hereinbefore submitted to you; but if you believe that a person of ordinary care would not have continued in the service of the receivers with knowledge of the dangers, if any, or would not have incurred the risk under the circumstances deceased did, you will return a verdict for defendants."

Appellants requested the court to charge the jury that the manner of operating the logging train, with the engine towards the center of the train, was the usual and customary manner in which it had been operated, which was well known to Lewis, and that, as matter of law, he assumed the risk therefrom. Also that if Lewis knew that the train was customarily operated that way, he must be held to have assumed the risk. Both these charges were refused, as set out in separate assignments of error.

It will be seen that the court applied to the facts of this case, as part of the law of assumed risk, the provisions of the Act of the 29th Legislature (chapter 163, p. 386), which are as follows:

"Section 1. That in any suit against a person, corporation or receiver operating a railroad or street railway for damages for the death or personal injury of an employe or servant caused by the wrong or negligence of such person, corporation or receiver, that the plea of assumed risk of the deceased or injured employe, where the ground of the plea is knowledge or means of knowledge of the defect and danger which caused the injury or death, shall not be available in the following cases: . . . Where a person of ordinary care would have continued in the service with the knowledge of the defect and danger, and in such case it shall not be necessary that the servant or

employe give notice of the defect, as provided in subdivision 1 hereof."

Appellants contend that the Act has no application to the facts of this case, in that the manner in which the train was made up, with the engine in the center, running backwards, at night, which seems to have been the customary manner of its operation, was not such a "defect and danger" as come within the meaning of those terms as used in the statute, and appeal to the language of the emergency clause to support their contention. The emergency clause is as follows: "The fact that there is now no adequate law protecting employes on railroads in their employment from damage in operating defective machinery, etc." If the terms "defect and danger" are broad enough to cover the defective or improper and dangerous manner in which the train was made up and operated, we do not think they should be limited in their application to defective machinery by reason of the terms of the emergency clause of the Act. That may have been, and probably was, the most prominent thought in the mind of the Legislature, but the purpose of such emergency clause and the lack of any necessity that it should be clear and specific in its terms precludes the idea that there was any intention that it should have the effect of limiting the terms employed in the body of the Act.

Turning, then, to these terms, "defect and danger," without any limitation confining them to any particular kind of defect and danger, it seems a reasonable construction of the Act that it was intended to cover the entire field of those defects and dangers to which persons engaged in operating a railroad or street railway were exposed, as to which, as the law then existed, such employes, if they knew of such defects and dangers, were held to have assumed the risk of them, and to apply to all such cases the same rule as obtains in applying the law as to contributory negligence; that is, what a person of ordinary care would have done in the circumstances. We confess that the question is not without difficulty. We can not find that these terms, as here used, have been particularly defined in any reported case. It is remarked by the Supreme Court in St. Louis & S. F. Ry. Co. v. Mathis (101 Texas, 342), that the Act in question practically abolishes the distinction between contributory negligence and assumed risk, and clearly it does in cases coming within the statute. Neither this case nor Currie v. Missouri, K. & T. Ry. (101 Texas, 478) lend much assistance in determining the question here presented. Our conclusion, however, upon mature consideration, is, that the facts here stated as constituting the negligence of appellants come within the meaning of the Act in question, and that in instructing the jury on the issue of assumed risk it was correct to apply to such charge the provisions of the statute, and to refuse the charges requested on this issue, which ignored those provisions.

It is also contended by appellants that, under the undisputed evidence, the deceased Lewis was guilty of contributory negligence, both as an independent defense and as a part of the law of assumed risk under the statute. The view is pressed with much force, both of argument and authority, that the very facts relied upon to show negligence on the part of appellants, convict Lewis of negligence likewise.

The statute itself recognizes that there may be cases when the master may be guilty of negligence in the matter of defects and dangers, but the servant will not be, even if he have full knowledge thereof and continue in the employment where he is exposed to such danger. In this case it is simply a question whether a person of ordinary care would have so continued. It will not do, we think, to say that if the master was negligent in the matter complained of as to the makeup and operation of the train, and the servant knew that this was the customary manner of operation and was aware of the danger, it necessarily follows that no person of ordinary care would have continued in the service and exposed to the danger. This is, we understand, appellants' contention.

Negligence, whether of the one party or the other, is always a question for the jury to be judged by the standard of ordinary care, unless the undisputed evidence establish the one side or the other of the issue, in which case, as in all other issues of fact, it is the duty of the court to determine the issue. It becomes then an issue not of fact but of law. (Joske v. Irvine, 91 Texas, 574.) But on account of the standard by which the issue is to be tried, it is very seldom that it can properly be determined by the court as one of law. In the present case we are of the opinion that the evidence required the submission of the issues of contributory negligence and assumed risk to the jury, and that it was sufficient to sustain their finding.

What we have said disposes likewise of the seventh assignment of error, which complains of the refusal of the court to give to the jury special charges 4 and 5, as to the assumption of risk by Lewis of the presence of cattle on the track. The evidence showed that the track was unfenced, and that cattle running through the woods were often upon the track, and often found lying upon the track at night, as on the occasion of this accident. If Lewis knew of this, his action in continuing in the performance of his duty, in which he was engaged at the time of the accident, as to whether he assumed the risk of such danger or was guilty of negligence contributing to his death, in either case must be judged by the standard of ordinary care as applied thereto. The assignments of error presenting the contrary conclusion must be overruled.

There was no reversible error in refusing to give the charges requested by appellants, in substance, that they rested under no duty to fence their road, and that the failure to fence did not show liability in this case. No charge of negligence was predicated upon this failure. It was not an issue, and the jury could not have considered that any inference of negligence could be drawn by them from this fact. The fact, however, that cattle were frequently upon the track might very properly have been considered in determining the issue as to whether there was negligence in operating the train as it was, in the night-time, and also as to such negligence in the rate of speed at which it was run.

The evidence does not show that Lewis had any control over the speed of the train other than that, from his station at the front of the train with a lantern, his duty was to cause the train to stop or slow down when he saw any obstruction on the track. Under such a

state of facts it would have been error to have given the charge asked by appellants, that if the train was being run at an excessive rate of speed, and Lewis failed to give any signal for the purpose of slowing down the train, plaintiffs could not recover. There is no evidence that Lewis saw the cattle, or, in fact, could have seen them by the light of his lantern, until the train was upon them. There is no merit in the ninth assignment presenting this question.

There was no error in refusing special charge 15, requested by appellants. If any charge upon this point was called for, which we doubt, the charge given by the court was sufficient.

We have carefully examined the several assignments of error and the propositions thereunder, and conclude that none of them presents any ground for reversal. The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.