CECIL SMITH V. THE STATE.

No. 15116.    Delivered April 20, 1932.

The opinion states the case.

*Joe W. Taylor, John N. Gauntt,* and *I. Mack Wood,* all of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for life.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Ernest Holmes by shooting him with a pistol.

Chapter 151, Special Laws of the 42d Legislature (1931), at its Regular Session (Vernon's Ann. Civ. St., art. 2116a), provides for a jury wheel and the selection of juries by means thereof in counties having a population of not less than 95,000 and not more than 125,000 "according to the 'lastest' (latest) United States census." Section 1 of the act reads, in part, as follows: "Between the 1st and 15th days of July, 1931, and between the 1st and 15th of July each year thereafter the judges of the District Courts of the county hereinafter described shall oppoint Jury Commissioners for the said courts as follows: One Commissioner from each rural Justice Precinct and in Justice Precincts having therein a city containing a population of not less than twenty thousand (20,000) and not more than thirty five thousand (35,000) two Commissioners; and the Precincts containing a city of more than thirty five thousand (35,000) and not more than seventy five thousand (75,000) four Commissioners and in Precincts containing seventy five thousand (75,000) and not more than one hundred twenty five thousand (125,000) six Commissioners; and in Precicts, a city of more than one hundred twenty five thousand (125,000), eight Commissioners; and shall cause the sheriff to notify them of their appointment and when they are to appear."

The remaining provisions of section 1 relate to the qualifications of the jury commissioners and the time for meeting for the purpose of filling the wheel. Section 2, in substance, provides that the commissioners shall place in the wheel the names of as many men who are known to be qualified jurors under the law as may be directed by the court. Section 3 relates to the drawing of the jurors from the wheel, it being therein provided: "Whenever directed by the Court having charge of said jurors, the District Clerk or one of his deputies in the presence and under the direction of the District Judge, if the Jurors are to be drawn for the District Court or the Clerk of the County Court or one of his depnties, or the Sheriff or one of his deputies in the presence and under the direction of the County Judge, if the jurors are to be drawn for the County

Court, shall draw from the wheel containing the names of the Jurors after the same has been well turned, so that the cards therein are thoroughly mixed one by one, the names of thirty six Jurors, or a greater or less number where such Judge has so directed, for each week of the term of the District or County Courts for which a Jury may be required, and shall record such names as they are drawn upon as many separate sheets of paper as there are weeks for such term or terms for which Jurors will be required. At such drawing, no person other than those above named, shall be permitted to be present. The officers attending such drawing shall not divulge the name of any person that may be drawn as a Juror to any person."

No provision is made for sealing and certifying the lists of jurors drawn from the wheel. No provision is made for the delivery of the lists by the judges to the clerk or one of his deputies. No provision is made for administering an oath enjoining upon the officer the duty of keeping the lists intact. The act provides further that no other law inconsistent with the provisions of said act shall be applicable.

The statute in question was enacted after January 13, 1931, and became effective on May 13th of the same year. It is recited therein that Senate Bill No. 105, chap. 29, Acts of the First Called Session of the Forty-First Legislature, is thereby amended. Reference to Senate Bill No. 105, chap. 29, Acts of the First Called Session of the Forty-First Legislature, discloses that it is identical in its terms with the amendatory act, except that it is provided in the act amended that its provisions shall be applicable in every county in the state having a population of not less than 78,000 and not more than 85,000 according to the "latest United States census." Senate Bill No. 105, chapter 29, was enacted after April 22, 1929, and became effective on May 23rd of the same year.

At the time of the enactment of the statute last mentioned the latest United States census, which was that of 1920, gave McLennan county a population of 82,921. It was the only county in the state affected by the provisions of Senate Bill 105, chapter 29. The census of 1930 disclosed that McLennan county had a population of 98,682. Hence the county, by virtue of the increased population, had passed beyond the operation of Senate Bill 105, chapter 29, and had returned to the classification within the purview of the act of 1907, page 269, chapter 139, as amended by the acts of 1911, page 150, chapter 82, and as further amended by chapters 43 and 116, Acts 1929, Forty First Legislature (Vernon's Annotated Civil Statutes, arts. 2094, 2095), relating to the selection of juries by means of a jury wheel in counties having a population of not less than 58,000, or containing therein a city of not less than 20,000, according to the preceding United States census. After the publication of the United States census for 1930, the Legislature amended Senate Bill 105, chapter 29, Acts of the First Called Session of the Forty-

First Legislature in the manner heretofore mentioned, that is, the provisions thereof were reenacted in chapter 151, Special Laws of the Forty-Second Legislature· as its Regular Session, with the proviso that such provisions should have application only in counties containing a population of not less than 95,000 and not more than 125,000 "according to the latest United States census." At the time of the enactment of the amended statute, McLennan county alone was affected by its provisions. At the present time it is alone within the operation of said statute.

The Act of 1907, page 269, chapter 139, as amended by the acts of 1911, page 150, chapter 82, and as further amended by chapters 43 and 116, Acts, 1929, Forty-First Legislature (Vernon's Annotated Civil Statutes, arts. 2094, 2095), provide for the drawing of juries by means of a jury wheel. We quote from the act as follows:

"Between the first and fifteenth days of August of each year, in each county having a population of at least 58,000 or having therein a city containing a population of at least 20,000 as shown by the preceding Federal Census, the Tax Collector or one of his deputies, together with the Tax Assessor or one of his deputies, together with the Sheriff or one of his depnties, and the County Clerk or one of his deputies, and the District Clerk or one of his deputies, shall meet at the court house of their county and select from the list of qualified jurors of such county as shown by the tax list in the Tax Assessor's office for the current year, the jurors for service in the District and County Courts of such county for the ensuing year in the manner hereinafter provided."

The act, among other things, provides that the names of all men known to be qualified jurors under the law shall be placed in the wheel. It further provides for the drawing of the names of the jurors from the wheel, for the sealing and certification of the lists, the delivery of the lists by the judge of the court to the clerk after administering an oath enjoining secrecy.touching the disposition and opening of such lists.

If given effect, the act involved in the present case withdraws from the operation of the act of 1907, as amended, counties having a population of not less than 95,000 and not more than 125,000, and leaves within the purview of the act of 1907 three classes of counties, viz: First, counties having a population of not less than 58,000, and not more than 94,999; second, counties having a population of not less than 125,001; and, third, counties having a population of less than 58,000, but having therein a city containing a population of at least 20,000.

With the foregoing general view of the statutes involved, we advert to appellant's criticism of chapter 151, Special Laws of the Forty-Second Legislature, at its Regular Session. Over objection by appellant, timely and properly interposed, he was forced to take a jury drawn in accordance with the provisions of said act. Touching the constitutionality of the act, it is urged that it is a local or special law, and hence within the

inhibition of article 3, section 56, of the Constitution of Texas, which, in part, provides: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special laws, authorizing: * * * Summoning or empannelling grand or petit juries * * *."

It appears that the enactment of a local or special law authorizing the summoning or impaneling of grand or petit juries is not "otherwise provided in the Constitution."

A law is not special because it does not apply to all persons or things alike. Clark v. Finley, 93 Texas, 171, 54 S. W., 343, 345. The definition of a "general law," as distinguished from a local or special law, given by the Supreme Court of Pennsylvania in the case of Wheeler v. Philadelphia, 77 Pa. St., 338, and approved by the Supreme Court of our own state, appears to be accurate. Clark v. Finley, supra. In the former case the court said: "Without entering at large upon the discussion of what is here meant by a 'local or special law,' it is sufficient to say that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special, and comes within the constitutional prohibition."

Classification of cities and counties by population, and legislation applicable to such classification, has generally been sustained where a substantial reason appears for such classification. McQuillin Municipal Corporations, vol. 1, sec. 204, p. 471; Clark v. Finley, supra; State ex rel City of St. Paul v. District Court of Ramsey County et al., 84 Minn., 377, 87 N. W., 942; State ex rel Anderson v. Sullivan, 72 Minn., 126, 75 N. W., 8. We quote from McQuillin on Municipal Corporations, supra, as follows: "Moreover, as indicated above, a sound and sufficient reason must appear for the classification, although based on population. Thus, it has been ruled in New Jersey that a statute granting to cities of the third class authority to lease their wharves is void because local or special. The basis of the decision is that population can not have any just reference to this distinction between classes of cities by which one is separated from the others."

In this state it is the rule that the Legislature can not evade the prohibition of the Constitution as to special laws by making a law applicable to a pretended class, which is, in fact, no class. Clark v. Finley, supra. The courts in other jurisdictions have given effect to the same principle. Com. v. Patton, 88 Pa. St., 258; Board of Comrs. of Owen County et al. v. Spangler et al., 159 Ind., 575, 65 N. E., 743. In Clark v. Finley, supra, the Supreme Court of our state said: "In so far as the courts which undertake to define the basis upon which the classification must rest hold that the Legislature can not, by a pretended classification, evade a constitutional restriction, we fully concur with them. But if they hold that a classification, which does not manifest a purpose to evade the Constitution is not sufficient to support a statute as a general

law merely because, in the court's opinion, the classification is unreasonable, we are not prepared to concur. To what class or classes of persons or things a statute should apply is, as a general rule, a legislative question. When the intent of the Legislature is clear, the policy of the law is a matter which does not concern the courts." If the classification of cities or counties is based on population, whether an act is to be regarded as special, and whether its operation is uniform throughout the state, depend upon whether population affords a fair basis for the classification with reference to the matters to which it relates, and whether the result it accomplishes, is in fact a real classification upon that basis, and not a designation of a single city or county to which alone it shall apply, under the guise of such classification. Parker-Washington County v. Kansas City, 73 Kan., 722, 85 Pac. 781.

The weight of authority is to the effect that a classification of cities or counties based on population, in order to be valid, must not exclude other counties or cities from coming into the class on attaining the specified population. Lewis' Sutherland, Stat. Construction (2d Ed.), p. 397, et seq. and notes; City of Ft. Worth v. Bobbitt, Atty. Gen., (Texas Com. App.), 36 S. W. (2d) 470; Hibbard v. State, 65 Ohio St., 574, 64 N. E., 109. We quote from Sutherland, supra, as follows: "A classification based upon existing or past conditions or facts and which would exclude the persons, places, things or objects thereafter coming into the same situation or condition, is special and void. Thus a classification of cities or counties based upon existing population or upon population shown by specified census is of this character."

The judicial precedents in which application has been made of the foregoing principle are numerous. City of Fort Worth v. Bobbitt, Attorney General, supra; Davis v. Clark et al., 106 Pa.; 377; State ex rel City of St. Paul v. District Court of Ramsey County et al, supra; State ex rel Anderson v. Sullivan, 72 Minn., 126, 75 N. W., 8; Morrison v. Bachert, 112 Pa., 322, 5 Atl., 739; Johnson v. City of Milwaukee, 88 Wis., 383, 60 N. W., 270; Campbell et al v. City of Indianapolis et al., 155 Ind., 186, 57 N. E., 920; Verges v. Milwaukee County, 116 Wis., 191, 93 N. W., 44. Illustrating the principle, we have in our state the recent decision in the case of the City of Fort Worth v. Bobbitt, supra. In that case the Supreme Court had under consideration an act authorizing the issuance of bonds by cities having a population of not less than 106,000 and not more than 110,000, according to the United States census of 1920. The city of Fort Worth alone was affected by the provisions of the act. In reaching the conclusion that the act was a local or special law, inhibited by section 56 of article 3 of the Constitution, the court reviewed many of the judicial precedents on the subject, and, in the course of the opinion, used language as follows:

"Of course we do not mean to hold that an act general in its nature

and terms would be in contravention of the above constitutional pro-visions, merely because at the time of its pasasge it only affects one city; in fact we hold to the contrary. We think, however, that an act which is so drawn that by its plain and explicit provisions it is made to apply to one city only in the state, and can never in any contingency apply to any other city, is just as repugnant to the constitutional provisions under discussion as though the name of the city to which the act does apply had been written into the act in the first instance. In other words, we think that a city can be designated by description just as effectively as it can be named.

"To state our views in another form, we hold that a law that has uniform application throughout the state to cities of a certain class, as to population, or other legitimate classification, is not repugnant to the constitutional provision under discussion, even though there is only one city in the state of that class, but when the law is so drawn that it applies only to one city and can never apply to any but this one city in any possible event, the law is unconstitutional and void, because such a law is not based on classification but on isolation. Cooley's Constitutional Limitations (8th Ed.), Notes, vol. 1, page 262, 263."

In our state the decisions on the question involved in City of Fort Worth v. Bobbitt, supra, are apparently not harmonious. The jury wheel law of 1907, before its amendment, was by its express provisions made applicable only to counties having cities aggregating 20,000 population according to the census of 1900. It excluded from its operation counties that might thereafter or at the time of its enactment have cities aggre-gating 20,000 in population. In Smith v. State, 54 Texas Crim. Rep., 298, this court sustained the classification and held that it was a general law, notwithstanding the fact that the classification was based upon the population shown by a specified census which would exclude counties thereafter coming into the same situation or condition from ever being within the operation of the law. In an able dissenting opinion, Judge Davidson referred to the fact that the act did not apply to all counties similarly situated at the time of its passage and that it excluded from its provisions all counties that might be similarly situated in the future. After reviewing many decisions dealing with the question involved, Judge Davidson used language as follows: "As to another phase of this law and its constitutionality, to-wit: That it is *exclusive,* and operates for the *present* only, to the *exclusion* of the *counties* which might come within its operation, all the authorities support the contention of appellant. Hetland v. Norman, 89 Minn., 492, 95 N. W., 305, holds an act special where its operation was limited to such counties as had at the time of its passage expended at least $7,000 for courthouse purposes. The court says the classification was both *illusive* and *arbitrary* and that it was *unique* and *novel.* 'To approve it would open the door to all sorts of special legis-

lation, general in form but special in fact, the only limitation to which would be the ingenuity of legislators in devising new classifications.' Without going into a further discussion of this particular phase of the subject, I cite in support of my views the following cases: State v. Simon, 53 N. J. Law, 550, 22 A., 120; Bennett v. Common Council, 55 N. J. Law, 72, 25 A., 113; Parker v. Common Council, 57 N. J. Law, 83, 30 A., 186; Coutieri v. City (of New Brunswick), 44 N. J. Law, 58; Zeigler v. Gaddis, 44 N. J. Law, 363; Douglass v. People, 225 Illinois, 536, 80 N. E., 341, 8 L. R. A. (N. S.), 1116, 116 Am. St. Rep., 162. In my opinion it is a safe proposition to assert that the Act of the Thirtieth Legislature does not apply to every county in the State and is, therefore, void: That, to make it a general law, it must not legislate only for present or unchangeable conditions. I am persuaded that no case can be found in the reports which holds a law to be general which failed to provide for and anticipate the wants of the future. On the contrary, whenever the question has arisen, every court has held a law special which created a classification which was *arbitrary* or *illusive,* and which operated upon *unchangeable conditions* and failed to provide for *future* localities or objects to come within the class, no matter how ingenious the evasion employed to make a special law assume the guise of a general law may have been. Perhaps, there may be no limit to the ingenuity displayed by legislative bodies intentionally or otherwise, to make a mere *designation* assume the form of a *classifiication.*"

Smith v. State, supra, was followed by many decisions of this court, among them being the following: Logan v. State, 54 Texas Crim. Rep., 74, 111 S. W., 1028; Huddleston v. State, 54 Texas Crim. Rep., 93, 112 S. W., 64; Jones v. State, 54 Texas Crim. Rep., 507, 113 S. W., 761; Oates v. State, 56 Texas Crim. Rep., 571, 121 S. W., 370. In the case of Northern Texas Traction Company v. Danforth, 53 Texas Crim. Rep., 419, 116 S. W., 148, one of our Courts of Civil Appeals considered the Act of 1907 before its amendment, and sustained its validity, with a statement as follows:

"The solution of the question is not free from difficulty, as there is a sharp conflict between the authorities of other jurisdictions. We, therefore, hold in deference to the holding in Smith v. State, supra, that said act is constitutional."

Again, in the case of Rice and Lyon v. Lewis et al., 59 Texas Crim. Rep., 273, 125 S. W., 961, the Act of 1907 was considered by the Court of Civil Appeals of the First Supreme Judicial District and sustained on the ground that it had been upheld by this court and by the Court of Civil Appeals in Traction Company v. Danforth, supra, following the Court of Criminal Appeals. Reference was made to the fact that in Traction Company v. Danforth, supra, a writ of error had been denied by the Supreme Court. After the decisions to which reference has been

made, the Legislature amended the act and provided therein, in substance, that the population upon which the classification was based should be as shown by the "preceding federal census." Thus, in employing the term defined in subdivision 8, article 23, Revised Civil Statutes, 1925, the Legislature removed the restriction involved in the question of the constitutionality of the act, and made it applicable to all counties that might thereafter by an increase of population come within its terms. Subdivision 8 of article 23, Revised Statutes of 1925, provides: " 'Preceding Federal census' shall be construed to mean the United States census of date preceding the action in question and each subsequent census as it occurs." In view of the amendment,—the legislative action coming as it did after the act had been assailed as being a local law under the great weight of authority,—the opinion is expressed that the decisions in the case of ·Smith v. State, supra, and the cases following it should not, in so· far as they are out of harmony with the holding in the case of City of Fort Worth v. Bobbitt, supra, control in determining whether a given act is local or special within the inhibition of article 3, section 56, of our Constitution.

A consideration of the classification created by the act involved in the present case in the light of article 3, section 56, of the Constitution, primarily calls for the application of the rule that the Legislature can not evade the prohibition of the Constitution by making a law applicable to a pretended class, which is as manifested by the act, in fact, no class. Clark v. Finley, supra. Some of the tests for determining whether a pretended class is manifested by an act are laid down by McQuillin on Municipal Corporations, vol. 1, pages 498, 499. We quote: "The classification adopted must rest in real or substantial distinctions, which renders one class, in truth, distinct or different from another class. * * * There must exist a reasonable justification for the classification; that is, the basis of the classification invoked must have a direct relation to the purpose of the law. * * *."

Giving application to the principles controlling, it is observed that the Legislature evidently deemed the act of 1907, as amended, adequate to provide juries in counties having a population of not less than 58,000 and not more than 94,999, and in counties having a population of not less than 125,001. This being true, what just reference could the population used as a basis for the class created by the law applicable to McLennan county have to the distinction between counties embraced therein and those within the operation of the act of 1907? If the act last mentioned adequately meets the needs of counties both below and above the limits of the class embraced in the statute involved here, it is reasonable to conclude that it (act of 1907) adequately met the requirements of the class attempted to be withdrawn from its operation by the statute under consideration. Again, the effort of the Legislature, by amending chapter 29, Acts of the Forty-First Legislature, First Called Session, after the census

of 1930 disclosed that McLennan county had by virtue of increased population passed beyond its operation, to hold McLennan county within the purview of the act, manifests, under the decisions, a purpose, by a pretended classification, to evade the constitutional inhibition, and, under the guise of such classification, to enact a law designed for McLennan county alone. Under the condition stated, the act manifests that the classification does not rest in real and substantial distinctions rendering the class involved distinct or different from the classes within the purview of the act of 1907, as amended. The act itself, when considered in connection with the act of 1907, shows that the basis of the classification,— the population involved,—has no direct relation to the purpose of the law. Hence the opinion is expressed that a violation of the provisions of article 3, section 56, of the Constitution is manifested. Being constrained to hold that the act is local and not general, the refusal of the trial court to quash the special venire necessitates a reversal of the judgment.

It is plausibly argued that the act is unintelligible. Our disposition of the case makes it unnecessary to enter into a discussion of the question.

The misconduct of the jury is not likely to occur on another trial, and will not be discussed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.