

# THE ATTORNEY GENERAL
## OF TEXAS

**GROVER SELLERS**
~~XXXXXXXXXXXXXX~~
~~JOHN BEN SHEPPERD~~
**ATTORNEY GENERAL**

**AUSTIN 11, TEXAS**

Honorable T. M. Trimble
First Assistant
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:                    Opinion No. 0-6542
                             Re:  Constitutionality of Article
                                  2700D, V.A.C.S.

        We are in receipt of your request for opinion dated
April 19, 1945.  As we construe your request you desire our
opinion as to the constitutionality of the hereinafter quoted
portion of Article 2700 D, Section 2, Vernon's Annotated Texas
Civil Statutes, towit:

        ". . . and the commissioners' courts of the
    counties having a population of not less than
    100,000 nor more than 150,000 may expend out of
    the general fund of said counties any sums not
    exceeding the sum of $1200 per annum, to defray
    the expenses incurred by said county superinten-
    dent which said sum or any part thereof shall be
    paid by said commissioners upon certificate  of
    said superintendent that the expenses have been
    incurred in the discharge of his duties as such
    superintendent."

        Said above quoted statutory provision is a portion of
S.B. 268, 41st Leg., Reg. Session, 1929.  Said S.B. 268 reads
as follows:

        "COUNTY SUPERINTENDENT - SALARY

S.B. No. 268              Chapter 148.

        "An Act to fix the salary of the Superin-
            tendent of Public Instruction in each
            County in Texas, having a population
            of not less than 100,000 nor more than
            150,000 according to the last Federal
            Census; providing for office expenses
            in such Counties; repealing all laws
            and parts of laws in conflict and de-
            claring an emergency.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. That the salary of the County
Superintendent of Public Instruction of each County
in Texas, having a population of not less than
100,000 nor more than 150,000 according to the
last Federal Census, shall from and after passage
of this Act be not less than the sum of $2,800.00
per annum, or more than the sum of $3,800.00 per
annum.

"Sec. 2. In making the annual per capita
apportionment to the schools of the Counties having
a population of not less than 100,000 and not more
than 150,000 the County School Trustees shall also
make an annual allowance out of the State and
County Available Funds for the payment of the salary
of the Superintendent of Public Instruction not less
than $2,800.00 nor more than $3,800.00 and the
Commissioner's Courts of the Counties having a pop-
ulation of not less than 100,000 nor more than
150,000 may expend out of the general fund of said
counties any sums not exceeding the sum of $1200
per annum, to defray the expenses incurred by said
County Superintendent which said sum or any part
thereof shall be paid by said Commissioners upon
certificate of said Superintendent that the expenses
have been incurred in the discharge of his duties
as such superintendent.

"Sec. 3. Said salary to be paid monthly
upon the order of the county school trustees, pro-
vided that said salary to the Superintendent of
public instruction for the month of September shall
not be paid until the Superintendent shall have
presented a receipt or certificate from the State
Superintendent of Public Instruction showing that
he has made all reports required of him; that the
expenses provided for herein shall be paid monthly
by the County Treasurer on the order of the Commis-
sioner's Court.

"Sec. 4. All laws and parts of laws in con-
flict herewith are hereby repealed.

"Sec. 5. The fact that the present salaries
of the County Superintendents of Public Instruction
of Counties having a population of not less than
100,000 nor more than 150,000 are inadequate and out
of proportion to the labor and responsibility attached

to the office, and that there is no adequate pro-
vision for the payment of the necessary expenses
of the County Superintendent in such Counties,
creates an emergency and an imprative   public
necessity that the constitutional rule requiring
bills to be read on three several days be sus-
pended, and said rule is hereby suspended, and
this Act shall take effect and be in force from
and after its passage and it is so enacted.

"Effective March 9, 1929."

The emergency clause used the plural terms "County
Superintendents" and "counties" as coming within the population
brackets of the Bill; whereas, in truth and in fact, only one
county, towit, El Paso County, Texas, came within the population
brackets set out in the bill, according to the 1920 Federal
census, the last preceding Federal census prior to the enactment
of the Bill.  Under the 1930 Federal census El Paso County and
Jefferson County came within the population brackets of the Act.
Under the 1940 Federal census El Paso, Jefferson, Hidalgo,
McLennan and Travis Counties came within the population brackets
set out in said Act.

Article 2700, Vernon's Annotated Texas Civil Statutes,
reads as follows:

"Art. 2700.   Salary of the County
              Superintendent

"Section 1.  The elective County Superinten-
dent shall receive from the Available School Fund
of their respective counties annual salaries based
on the scholastic population of such counties as
follows:

| Population | Amount |
|---|---|
| 3,000 or less | $1,800.00 |
| 3,001 to 4,000 | 2,000.00 |
| 4,001 to 5,000 | 2,200.00 |
| 5,001 to 6,000 | 2,400.00 |
| 6,001 to 7,000 | 2,600.00 |
| 7,001 to 8,000 | 2,800.00 |
| 8,001 to 9,000 | 3,000.00 |
| 9,001 to 12,000 | 3,200.00 |
| 12,001 to 15,000 | 3,400.00 |
| 15,001 to 30,000 | 3,600.00 |
| 30,001 to 40,000 | 3,800.00 |
| 40,001 to 50,000 | 4,200.00 |
| 50,001 and over | 4,800.00 |

"Provided, however, in counties having more than three thousand, five hundred (3,500) scholastics and less than eight thousand and one (8,001) scholastics, where no supervisor is employed and where the total expense for office assistants does not exceed Eighteen Hundred Dollars ($1800) per annum, the salary of the County Superintendent may be set at a sum not to exceed Three Thousand Dollars ($3,000) per annum by action of the County Board of Trustees.

"In making the annual budget for County Administration expense the County School Trustees shall make allowance out of the State Available School Fund for salary and expenses of the office of the County Superintendent and the same shall be determined by the resident scholastic population of the county. It shall be the duty of the County Board of Trustees to file the budget for County Administration expense with the State Department of Education on or before September first of each scholastic year, the budget to be approved and certified to by the President of the County Board of Education and attested to by the County Superintendent. The compensation herein provided for shall be paid monthly upon the order of the County School Trustees; provided that the salary for the month of September shall not be paid until the County Superintendent presents a receipt from the State Superintendent showing that he has made all reports required of him. The County Superintendent, with the approval and the confirmation of the County Board of Education, may employ a competent asssistant to the County Superintendent at an annual salary not to exceed Two Thousand Dollars ($2,000) and may also employ such other assistants as necessary provided the aggregate amount of the salaries of such other assistants shall not exceed Twelve Hundred Dollars ($1200) annually; provided that counties having a population of more than one hundred and twenty-five thousand (125,000) according to the last Federal Census may employ a competent assistant to the County Superintendent at an annual salary not to exceed Twenty-eight Hundred Dollars ($2800) and may also employ such other assistants as necessary provided the aggregate amount of the salaries of such other assistants shall not exceed Eighteen Hundred Dollars ($1800) annually; and the County Board of Education may make further provisions as it deems necessary for office

and traveling expense of the County Superintendent;
provided that expenditures for office and traveling
expenses of the County Superintendent shall not be
less than Three Hundred Dollars ($300) and not more
than Eight Hundred Dollars ($800) per annum, such ex-
pense shall first be proven by affidavit therefor,
and said Board is hereby authorized to fix the salary
of such assistants and pay same out of the same funds
from which the salary and expenses of the County
Superintendent are paid.

"Sec. 2.  The County Superintendent of Public
Instruction may, with the approval of the County
Board of Education, employ one or more school super-
visors to assist in planning, outlining, and super-
vising the work of the Public Free Schools in the
county which is under the supervision of the County
Superintendent of Public Instruction.  Said supervi-
sor or supervisors shall at all times work under the
supervision and direction of the County Superinten-
dent of Public Instruction, as other assistants are
required to do, and must have evidence of proficiency
in rural school supervision and must be the holder
of at least a Bachelor of Science Degree or higher.
Such supervisor or supervisors may receive a salary
of not to exceed Two Thousand Dollars ($2,000) per
annum, to be paid out of the same funds and in the
same manner as that of the County Superintendent of
Public Instruction and other assistants.

"Sec. 3.  It shall be the duty of the State
Superintendent to remit to the depository banks of
each of the respective counties the amount of the
State Available School Fund provided in the budget
of each county, remittance to be made in October and
February of each scholastic year, in equal amount.

"Sec. 4.  The State Superintendent of Public
Instruction is hereby authorized to issue and trans-
mit to county officials all instructions necessary
for the proper observance and administration of this
Act.

"Sec. 5.  All General and Special Laws in con-
flict herewith are hereby repealed except such laws
as provide for a part of the office expense to be
paid out of the general revenue of the county, except
that the repealing clause shall not apply to any
county that levies a special tax for the maintenance
of the office of the County Superintendent in whole

or in part. As amended acts, 1941, 47th Leg. p. 407, ch. 237; Acts 1943, 48th Leg. p. 697, ch. 388, § 1."

Article 2700, V.A.T.C.S., supra, clearly repeals the salary provisions of S.B. 268, supra (codified as Article 2700D, V.A.T.C.S.). However, Section 5 of Article 2700, supra, clearly states that the repealing clause is not applicable to any laws which provide for a part of the office expense to be paid out of the general revenue of the county.

There are many statutes, too numerous to serve any useful purpose in quoting here, or referring to specifically here, of very narrow population brackets, and of varied population brackets, dealing with and purportedly authorizing the Commissioners' Courts to expend county funds from the general revenue to assist in paying the expenses of county superintendents. Undoubtedly a very large portion of same are unconstitutional as being local or special laws in violation of Article III, Section 56 of our State Constitution. The amounts allowable range from $200.00, $300.00, $600.00, $900.00 to $1,200.00 per annum. When viewed as a whole there seems to be no real and substantial basis for the various classifications made. (With one exception, towit, Art. 2700a referred to in 3 infra.) For example, we will point out a few examples:

1. Art. 2700d-28, V.A.T.C.S., applicable to counties within population brackets 197,000 to 198,000 and 32,400 to 32,800; amount payable by Commissioners' Court to County Superintendent out of the general fund for expenses not to exceed $300.00 per annum.

2. Art. 2700b, V.A.T.C.S., applicable to counties of not less than 60,000 and not more than 73,000; amount payalbe by Commissioners' Court to County Superintendent out of the general fund for expenses not to exceed $600.00 per annum.

3. Art. 2700a, V.A.T.C.S., applicable to counties of more than 210,000; amount payable by Commissioners' Court to County Superintendents out of the general fund for traveling expenses not to exceed $900.00 per annum. (This article is probably constitutional).

4. Art. 2700d, V.A.T.C.S., the article under consideration here, which allows the top amount of not to exceed $1200.00 per annum for such expenses.

There is no allowance whatever for county superintendent's expenses to be paid from the county general revenue fund for counties between the brackets of 150,000 (the top bracket of

Art. 2700d) and the bracket of 210,000 (the bottom bracket of Art. 2700a, V.A.T.C.S.) with the lone exception of the bracket in Art. 2700d, V.A.T.C.S. (197,000 to 198,000 which allows a maximum of $600.00 per annum).

Thus we see the resulting hodge podge of laws enacted upon the subject under discussion. Counties having larger population than 150,000 are clearly discriminated against.

The case of Bexar County v. Tynan, 97 S.W. (2d) 467 holds, among other things:

"1. Act reducing salaries of officers in counties of over 290,000 and less than 310,000 population purports on its face to be a general law and not a local law. (Vernon's Ann. Civ. St. art. 3912b: Const. Art. 3, §56, 57.

"2. Act reducing salaries of officers in counties of over 290,000 and less than 310,000 population was not rendered a 'special' or 'local law' because it applied to only one county in state at time of passage, since it was not so framed as to exclude probability that it would apply to other counties in future (Vernon's Ann. Civ. St. Art. 3912b; Const. art. 3, Sec. 56, 57).

"3. Legislature may, on proper and reasonable classification, enact general law, which at time of enactment is applicable to only one county provided application is not so inflexibly fixed as to prevent it ever being applicable to other counties.

"4. Legislature may classify counties on basis of population for purpose of fixing compensation of county and precinct officers but classification must be based on real distinction and must not be arbitrary device to give what is in substance a local or special law, the form of general law.

"5. Courts in determining whether a law is public, general, special, or local will look to its substance and practical operation rather than to its title, form, phraseology, since otherwise prohibition of fundamental law against special legislation would be nugatory.

"6. To justify placing of one county in very limited and restricted classification by Legislature,

there must be some reasonable relation between situation of counties classified and purposes and objects to be obtained, and classification cannot be adopted arbitrarily on ground which has no foundation in difference of situation or circumstance of counties placed in different classes.

"7. Act reducing salaries of officers in counties of over 290,000 and less than 310,000 population held unreasonable and arbitrary in its classification and void as a 'special law', where it applied only to Bexar county, and where maximum compensation for county officers was reduced below that in counties of 37,500 and to less than half compensation allowed in other counties of more than 150,000 (Vernon's Ann. Civ. St. Art. 3912b; Acts 1930, 41st Leg. 4th called Sess. C. 20; Const. art. 3, Secs. 56, 57).

"8. Substantial differences in population of county can be made basis of legislation fixing compensation of county officers on theory that work devolving on office is in some degree proportionate to population of county.

"9. Where Legislature ignores obvious facts that work of county officers is proportionate to population and classifies counties in such way that compensation of officers of counties having large population is fixed far below compensation allowed like officers in small counties, classification is arbitrary and has no true relevancy to purpose of legislation."

We quote from the case of Miller v. El Paso County (Texas Supreme Court) 150 S.W. (2) 1000, as follows:

"Section 56, Article III of the State Constitution, Vernon's App. St., reads, in part, as follows:

"'Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:

". . . . .

"'Regulation the affairs of counties, cities, towns, wards or school districts,

" ,

"'Creating offices, or prescribing the
powers and duties of officers, in counties,
cities, towns, election or school districts;

" ,

"And in all other cases where a general law
can be made applicable, no local, or special law
shall be enacted. . . .'

"The purpose of this constitutional inhibi-
tion against the enactment of local or special
laws is a wholesome one. It is intended to pre-
vent the granting of special privileges and to
secure uniformity of law throughout the State as
far as possible. It is said that at an early
period in many of the states the practice of
enacting special and local laws became 'an effi-
cient means for the easy enactment of laws for
the advancement of personal rather than public in-
terests, and encouraged the reprehensible practice
of trading and 'logrolling'. It was for the sup-
pression of such practices that such a provision
was adopted in this and many of the other states
of the Union.

"Notwithstanding the above constitutional
provision, the courts recognize in the Legisla-
ture a rather broad power to make classifications
for legislative purposes and to enact laws for
the regulation thereof, even though such legisla-
tion may be applicable only to a particular class
or, in fact, affect only the inhabitants of a
particular locality; but such legislation must
be intended to apply uniformly to all who may
come within the classification designated in the
Act, and the classification must be broad enough to
include a substantial class and must be based on
characteristics legitimately distinguishing such
class from others with respect to the public pur-
pose sought to be accomplished by the proposed
legislation. In other words, there must be a
substantial reason for the classification. It
must not be a mere arbitrary device resorted to
for the purpose of giving what is, in fact, a
local law the appearance of a general law. City
of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S.W.
2d 470, 41 S.W. 2d 228; Bexar County v. Tynan, 128

Tex. 223, 97 S.W. 2d. 467; Clark v. Finley, Comptroller, 93 Tex. 171, 54 S.W. 343; Supreme Lodge United Benevolent Ass'n v. Johnson, 98 Tex. 1, 81 S.W. 18; Smith v. State, 120 Tex. Cr. R. 431, 49 S.W. 2d 739; Randolph v. State, 117 Tex. Cr. R. 80, 36 S.W. 2d 484; Fritter v. West, Tex. Civ. App. 65 S.W. 2d 414, writ refused; State v. Hall, Tex. Civ. App. 76 S.W. 2d 880; Wood v. Marfa Ind. School Dist. Tex. Civ. App. 123 S.W. 2d 429. As said in Leonard v. Road Maintenance District No. 1, 187 Ark. 599, 61 S.W. 2d 70, 71: 'The rule is that a classification cannot be adopted arbitrarily upon a ground which has no foundation in difference of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purposes and objects to be attained. There must be something ...... which in some reasonable degree accounts for the division into classes.' . . . .

"We are therefore met at the outset with a law which, under facts well known at the time of its adoption, was applicable only to a single county. Clearly then it is a local law and must fall as such, unless it can be fairly said that the class so segregated by the Act is a substantial class and has characteristics legitimately distinguishing if from the remainder of the State so as to require legislation peculiar thereto. In this instance the classification is made to rest entirely on the population of the county and a city therein. Resort to population brackets for the purpose of classifying subjects for legislation is permissible where the spread of population is broad enough to include or segregate a substantial class, and where the population bears some real relation to the subject of legislation and affords a fair basis for the classification. It has been legitimately employed in fixing fees of offices in certain cases (Clark v. Finley, Comptroller, 93 Tex. 171, 178, 54 S.W. 343) <u>but even then it is permissible only where the spread of population is substantial and is sufficient to include a real class with characteristics which reasonably distinguish it from others as applied to the contemplated legislation, and affords a fair basis for the classification.</u> Bexar County v. Tynan, 128 Tex. 223, 97 S.W. 2d. 467." (Underscoring ours).

Answering your question, we hold the provisions of Article 2700d, quoted in your letter, to be void and unconstitutional, as being a local or special law in violation of Article III, Section 56 of our State Constitution. It follows, therefore, that the Commissioners' Court of El Paso County is not authorized to pay out any funds of the general revenue of the county to the County Superintendent for expenses under said void Act.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/Wm. J. Fanning
Wm. J. Fanning
Assistant

WJF:bt:wc

APPROVED MAY 5, 1945
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By s/BWB Chairman